Stuart J. Alterman, Esquire
N.J. Attorney ID No. 327229999
Alterman & Associates, LLC
8 South Maple Avenue
Marlton, NJ 08053
Phone: (856) 334-5737
Fax: (856) 334-5731
salterman@alterman-law.com
Attorneys for Defendant John Grier

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

JOHN GRIER, III,

     Defendant

Criminal No. 21-524 (JHR)

DEFENDANT'S BRIEF RESPONDING TO THE GOVERNMENT'S MOTIONS *IN LIMINE* AND MOTION FOR RECIPROCAL DISCOVERY

## PRELIMINARY STATEMENT

A great deal of the Government's Memorandum of Law in support of its Motions *In Limine* is based on nothing other than pure speculation and conjecture of what it fears may happen at the time of trial.  This Court should not deal with theoretical scenarios.  The Federal Rules of Evidence are in place to address concerns of both sides as they occur.

This Brief will respond to the points raised by the Government, but not necessarily in the same order.

## **LEGAL ARGUMENT**

### **POINT I**

#### **THE GOVERNMENT'S MOTION AND MY OFFICE'S EMAIL FORWARDING DEFENDANT GRIER'S EXPERT REPORT CROSSED ON THE INTERNET HIGHWAY.**

The Government's Memorandum of Law in Support of its *In Limine* Motions was forwarded to my office on 5:27 PM on August 19, 2022. (See Exhibit A). At 5:36 PM on that same day, my office sent our expert report to the Government. (See Exhibit A). At the time, my Paralegal was under the mistaken belief that expert reports were uploaded to PACER in addition to being forwarded to the Government. Out of an abundance of caution, my office re-sent our expert report to the Government while finalizing this Brief. (See Exhibit B). The Government acknowledged receipt of the report and indicted its Motion was drafted prior to receipt of same. (See Exhibit C and Footnote 9 of Moving Brief).

Thus, the Government's Motion to bar Defendant Grief's expert report should be rendered moot. However, they have not formally withdrawn that aspect of their Motion. They have likewise not subsequently moved to bar Defendant Grier's expert report. As a result, Defendant Grier posits the following. The Federal Rules of Evidence are strictly construed to ensure that experts testifying in court present opinions supported by a methodology or qualitative analysis. The Rules state:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods,

and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702.

The Supreme Court has interpreted these rules and stated:

> [U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify.

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  The

Supreme Court laid down a framework for review:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. We are confident that federal judges possess the capacity to undertake this review. Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test. But some general observations are appropriate.

Id. at 592.  The Supreme Court then identified four factors:

> Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested… Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication… Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error… Finally, "general acceptance" can yet have a bearing on the inquiry

Id.  at 593-594.

The Supreme Court's decision in <u>Daubert</u> pertained only to scientific expert testimony.  However, the Supreme Court later expanded this ruling to apply to all expert testimony:

> In <u>Daubert</u>, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable."  The initial question before us is whether this basic gatekeeping obligation applies only to "scientific" testimony or to all expert testimony. We, like the parties, believe that it applies to all expert testimony.

<u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 147 (1999) (internal citations omitted).

The ultimate purpose of the Court's review is to determine the following:

> To say this is not to deny the importance of <u>Daubert's</u> gatekeeping requirement. The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

<u>Id.</u> at 152.  The Third Circuit in <u>Montgomery County v. Microvote Corp.</u>, has explained:

> The Supreme Court concluded that the inquiry is a flexible one, but that trial courts should focus "solely on principles and methodology, not on the conclusions they generate." However, the Supreme Court has noted that conclusions and methodology are not entirely distinct from one another, and that a "court may conclude that there is simply too great a gap between the data and the opinion proffered."

<u>Montgomery County v. Microvote Corp.</u>, 320 F.3d 440, 445-448 (3rd. Cir. 2003). (Internal citations omitted).

Senior District Judge Ackerman exhaustively spelled out the Third Circuit's jurisprudence in terms of experts:

The admissibility of "expert" testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence and the United States Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). When faced with a challenge to expert testimony, a court must determine, pursuant to Rule 104(a) of the Federal Rules of Evidence whether the testimony satisfies the standard of "evidentiary reliability" and whether it will assist the trier of fact to understand or determine a fact in issue.

Rule 702 provides that where

scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

"Rule 702 imposes three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." First, the proffered witness must be a qualified expert, meaning that the witness must possess specialized expertise. Second, the testimony must be reliable. This has been interpreted to mean that an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." Third, the expert's testimony must "fit," meaning that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact."

Daubert represents the Supreme Court's definitive pronouncement on the nature of a Rule 702 inquiry. Daubert requires courts to perform a "gatekeeping function" to ensure the relevance and reliability of expert testimony, and in Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court extended this gatekeeping obligation from scientific evidence to encompass all expert testimony. The Supreme Court in Daubert and the Third Circuit in Paoli announced factors for courts to consider in

determining whether to admit expert testimony. These factors include:

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

This list is "nonexclusive" and "each factor need not be applied in every case."  Rather, the court must tailor its inquiry to the facts of each case and "should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of the expert testimony."  The proponent of expert testimony must establish the admissibility of the expert's opinion by a preponderance of the evidence.

In considering the reliability of an expert's testimony, the testimony need not be flawless for it to be reliable and admissible.  As the Third Circuit has recognized,

[t]he grounds for the expert's opinion merely have to be good, they do not have to be perfect. The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result.

Furthermore, the court's role as a gatekeeper "is not intended to serve as a replacement for the adversary system." Fed.R.Evid. 702 advisory committee's note. As the Supreme Court noted in Daubert "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

However, courts need not admit bare conclusions or mere assumptions proffered under the guise of "expert opinions."

> While the inquiry as to reliability focuses "solely on principles and methodology, not on the conclusions that they generate," the Supreme Court has recognized that "conclusions and methodology are not entirely distinct from one another." Accordingly, when making a preliminary determination as to the admissibility of expert testimony, a court must engage in limited review of an expert's conclusions "in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." If a logical connection between the facts and the expert's opinion is lacking, the expert's testimony is properly excluded, as the Supreme Court has noted in Joiner:

> nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

Feit v. Great-West Life and Annuity Insurance Company, 460 F.Supp.2d 632, 635-637 (D.N.J. 2006). (Internal citations omitted).

In the case at bar, Defendant Grief's expert report fully complies with the Supreme Court's dictates, the Third Circuit's dictates, and this District's dictates as to expert reports and Mr. Kapelsohn should not be prohibited from testifying.

## POINT II

**WITH THE PROPER LIMITING INSTRUCTIONS FROM THE COURT, DEFENDANT GRIER HAS NO OBJECTION TO THE SUBSEQUENT DEATH OF MR. DRUMMOND BEING DISCLOSED TO THE JURY.**

The Brief of the Government seeks to introduce the death certificate of Mr. Drummond "so that the jury will not be inclined to speculate as to the reason why the Government has not presented the Victim's testimony." (Moving Brief at pg. 19). The Government concedes "the Victim's death was unrelated to the Incident and occurred years after the Incident." (Moving Brief at pg. 22).

While Defendant Grier has no objection to the subsequent death of Mr. Drummond being disclosed to the jury, same should be done by way of limiting instructions from the Court. For example, Mr. Drummond should not be referenced as "the Victim" in any such limiting instruction. Additionally, any such limiting instruction should make it abundantly clear that Mr. Drummond's death was in no way related to the Incident and was in no way accelerated by the Incident.

## POINT III

**GIVEN THE SUBSEQUENT DEATH OF MR DRUMMOND, ALLOWING SUBMISSION OF THE INDICTMENT TO THE JURY WOULD AMOUNT TO A VIOLATION OF DEFENDANT GRIER'S SIXTH AMENDMENT RIGHTS.**

The Court should exercise its discretion not to submit the Indictment to the jury in this matter. It is understood that the Indictment handed down in this matter was based, in part, on the testimony of Mr. Drummond. It further is obvious that neither Defendant Grier nor a representative on his behalf was invited to the Grand Jury proceedings to cross-examine the witnesses presented by the Government, which included Mr. Drummond. Finally, as the Court sees from the Moving Brief and the previous Point Heading, Mr. Drummond has since passed away from unrelated circumstances.

To allow the jury to view the Indictment of Defendant Grier in this matter given the above circumstances would be an affront to the Confrontation Clause. The Sixth Amendment's Confrontation Clause provides that:

> [i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.

The United States Supreme Court has held that this bedrock procedural guarantee applies to both federal and state prosecutions. Pointer v. Texas, 380 U.S. 400, 406 (1965).

The Supreme Court noted:

> [The Confrontation Clause} applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text,

> like the history underlying the common-law right of
> confrontation, thus reflects an especially acute concern with
> a specific type of out-of-court statement.

Crawford v. Washington, 541 U.S. 36, 51 (2004).

Since the Indictment in question bears, in part, on the testimony of Mr. Drummond, allowing the jury to view it as part of its deliberations would be an evisceration of Defendant Grier's Sixth Amendment Rights.

## POINT IV

**THE GOVERNMENT'S ATTEMPT TO USE PRIOR GRAND JURY TESTIMONY IS DELIBERATELY VAGUE AND SHOULD BE ADDRESSED ON A WITNESS-BY-WITNESS BASIS.**

At one point in its submission, the Government says it will not be presenting Mr. Drummond's testimony to the jury given his death. (Moving Brief at pg. 19). However, its Point Heading on attempting to use prior grand jury testimony fails to mention Mr. Drummond at all. By failing to exclude Mr. Drummond from its application, Defendant Grier is leery of the motive in the Government making this particular *in limine* motion.

Clearly, any attempt by the Government to directly or indirectly offer as substantive evidence the Grand Jury testimony of Mr. Drummond would be an even more blatant violation Defendant Grier's Sixth Amendment Rights than seeking to let the jury view the Indictment.

Defendant Grier submits that individual witnesses purportedly answering elusively or individual witnesses purportedly claiming memory loss can be managed on a witness-by-witness basis as opposed to the Court entering some sort of a generic order on the use of prior grand jury testimony.

10

## POINT V

### ANY PRECLUSION TO REFERENCING POSSIBLE PUNISHMENT OR COLLATERAL CONSEQUENCES OF CONVICTION SHOULD BE NARROWLY TAILORED.

While Defendant Grier does not necessarily contest his inability to reference possible punishment or collateral consequences of conviction stemming from the Indictment at issue, such a bar should not include:

    a.  The lack of a prosecution of Defendant Grier in State Court stemming from the Incident;

    b.  The lack of prosecution of Defendant Grier in Municipal Court stemming from the Incident; or

    c.  The results of any Internal Affairs investigation of Defendant Grier stemming from the Incident.

## POINT VI

### ANY PRECLUSION TO LAW ENFORCEMENT OFFICERS NOT BEING ALLOWED TO WEAR UNIFORMS SHOULD BE NARROWLY TAILORED.

The Government seeks to bar all law enforcement officers in the gallery from wearing police uniforms during the trial.  Defendant Grier submits that any universal ban would be excessive and overly punitive.  Clearly, any law enforcement officers taking the day off to attend trial or attending trial on a previously scheduled day off could be ordered not to attend trial in uniform.

However, such a ban should not apply to any law enforcement officer who is coming to court directly after completing his or her shift of employment.  Likewise, such a ban should not apply to any law enforcement officer who is attending court and then directly reporting to his or her shift of employment after a partial or full day of attending

court proceedings.  Neither spectators nor supporters should be unduly deprived of their ability to attend a public trial by being delayed due to a forced change of attire.

## POINT VII

**THE ISSUE OF WITNESS HOSTILITY SHOULD BE MANAGED ON CASE-BY-CASE BASIS.**

The Government states it "is not seeking a declaration before trial that any of the police witnesses are hostile" that it intends to call." (Moving Brief at pg. 19).  Yet, it goes on for two full pages of legal argument as to why it should be allowed to treat police witnesses as hostile under the Federal Rules of Evidence.  As Defendant Grier pointed out in his Preliminary Statement, a majority of the Government's Motions are based on nothing other than pure speculation and conjecture of what it fears may happen at the time of trial.  When, and if, a witness is perceived by the Government to be hostile, the Court is well equipped to deal with that issue at the time it arises.

## POINT VIII

## THE ISSUE OF CHARACTER WITNESSES SHOULD BE MANAGED ON CASE-BY-CASE BASIS.

As to character witnesses, the Government goes on for seven pages discussing:

    a.  What it "anticipates" (Moving Brief at pg. 6); and
    b.  What it "believes" (Moving Brief at pg. 6).

It then seeks to have the Court undertake a theoretical exercise trying to cover every conceivable scenario that could arise at trial when it comes to character evidence.

Rather than undertake such an esoteric exercise, the Court should simply require that Defendant Grier make a proffer as to his character witnesses by a date certain and then address specific concerns of the Government at that time.

## POINT IX

## LAY WITNESSES SHOULD NOT BE ALLOWED TO INFRINGE UPON EXPERT TESTIMONY.

At one point the Government posits "[t]he witnesses at issue here are not experts, but are fact witnesses who were on the scene and were actively participating in Drummond's arrest when the Defendant pepper-sprayed him." (Moving Brief at pg. 15). Yet, earlier in the same point heading, the Government admitted it seeks an order allowing BPD officers "to offer opinions about the Defendant's use of force and any resulting medical injuries sustained by the victim." (Moving Brief at pgs. 13-14).

As with most of the Government's Brief, the generic terms "use of force" and "any resulting medical injuries" are unduly vague and open to interpretation. Defendant Grier concedes that BPD officers are and were trained to make observations, memorialize those observations, and sometimes must recall those observations in trial. Thus,

Defendant Grier takes no issue with the Government asking any BPD officers what they observed on the date of the Incident.

However, it is patently unfair to simply allow a generic order concerning "any resulting medical injuries" to be allowed as to lay witnesses.  There is a huge difference between a responding BPD officer saying that "Mr. Drummond's eyes were running" or that "Mr. Drummond was coughing for a few seconds" versus offering an opinion on diagnosis, treatment, or prognosis on "any resulting medical injuries."

Similarly, when it comes to "use of force", there is a material difference to a BPD officer saying "I observed Defendant Grier do X for Y seconds"  or "I heard Defendant Grier say Z as he did A, B. and C" versus eliciting from that same BPD officer an opinion on "excessiveness" of something undertaken by Defendant Grier or eliciting an opinion that something undertaken by Defendant Grief "was contrary to New Jersey Attorney General Guidelines."

Again, rather than provide the Government with blanket permission to seek lay witness opinion, the Court would be better served by requiring the Government to make a proffer as to what lay opinions they seek from what lay witnesses and manage them on a case-by-case basis.

## POINT X

**THE COURT SHOULD HOLD A CASE MANAGEMENT CONFERENCE TO DISCUSS PROFFERS, RECIPROCAL DISCOVERY, AS WELL AS OTHER PERTINENT ISSUES IN THIS MATTER.**

My office does not dispute that the Government is entitled to reciprocal discovery to the extent it exists.  Given a recent outbreak of Covid within my office that resulted in me being out of the office for several weeks, I think it would be beneficial for the Court to hold a Case Management Conference to discuss various issues in this matter as well as the current trial schedule.

Respectfully submitted,

ALTERMAN & ASSOCIATES, LLC.

STUART J. ALTERMAN

Dated: September 16, 2022

15

# EXHIBIT A

**Cristin Morris**

| | |
|---|---|
| **From:** | Cristin Morris |
| **Sent:** | Friday, August 19, 2022 5:36 PM |
| **To:** | Richardson, Jason (USANJ); Stuart Alterman |
| **Cc:** | Harteis, Lindsey (USANJ) |
| **Subject:** | RE: USA v. Grier |

Thank you Mr. Richardson. I will have our expert reports etc filed in PACER next week. Mr. Alterman is out of office currently but wanted to get you same asap.

Have a nice weekend.

Cristin Morris, Legal Assistant
ALTERMAN & ASSOCIATES, LLC
cmorris@alterman-law.com

MAIN OFFICE
8 SOUTH MAPLE AVENUE
MARLTON NJ, 08053
OFFICE TELEPHONE (856) 334-5737
OFFICE FACSIMILE (856) 334-5731
CELL (856) 905-6712

ADDITIONAL OFFICE
11 MULLER PLACE
LITTLE FALLS, NJ 07424
OFFICE TELEPHONE (973) 956-1621
OFFICE FACSIMILE (973) 956-1421

***CONFIDENTIALITY NOTICE*** The information contained in this electronic mail is Attorney privileged and Confidential Information intended only for the use of the intended recipient named above. If the reader of this message is not the intended recipient or the agent of the recipient authorized to open it and deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this electronic mail in error, please notify us by telephone and delete the original electronic mail from your system. If you have printed out this electronic mail after having received it in error, please return the printed version to us at the above address via the U.S. Postal Service.

**From:** Richardson, Jason (USANJ) <Jason.Richardson@usdoj.gov>
**Sent:** Friday, August 19, 2022 5:27 PM
**To:** Stuart Alterman <SAlterman@Alterman-law.com>
**Cc:** Harteis, Lindsey (USANJ) <Lindsey.Harteis@usdoj.gov>; Cristin Morris <cmorris@ALTERMAN-LAW.COM>
**Subject:** USA v. Grier

This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Stuart,

Attached please find a copy of the Motions in Limine, along with the exhibits, which were filed today.  Please let me know if you have any questions.

Thanks, Jason

Jason M. Richardson
Assistant U.S. Attorney
U.S. Attorney's Office
District of New Jersey
U.S. Post Office and Courthouse
401 Market Street, 4th Floor
Camden, New Jersey 08101
856-757-5026
856-968-4817 (fax)

# EXHIBIT B

**Cristin Morris**

| | |
|---|---|
| **From:** | Cristin Morris |
| **Sent:** | Friday, September 16, 2022 10:48 AM |
| **To:** | Richardson, Jason (USANJ) |
| **Cc:** | Stuart Alterman |
| **Subject:** | USA v. John Grier, III, Crim. 21-524 (JHR) |
| **Attachments:** | Grier Expert Report.pdf; Curriculum Vitae - EK - 3-9-22 - for merge.pdf |

Mr. Richardson:

In preparing responses to your Motion, please find attached our expert report and CV in this matter.

I do apologize as I thought that I had emailed same to you back on 08/19/22.  I must NOT have attached the report inadvertently.

Thank you.

Cristin Morris, Legal Assistant
ALTERMAN & ASSOCIATES, LLC
cmorris@alterman-law.com

<u>MAIN OFFICE</u>
8 SOUTH MAPLE AVENUE
MARLTON NJ, 08053
OFFICE TELEPHONE (856) 334-5737
OFFICE FACSIMILE (856) 334-5731
CELL (856) 905-6712

<u>ADDITIONAL OFFICE</u>
11 MULLER PLACE
LITTLE FALLS, NJ 07424
OFFICE TELEPHONE (973) 956-1621
OFFICE FACSIMILE (973) 956-1421

***CONFIDENTIALITY NOTICE*** The information contained in this electronic mail is Attorney privileged and Confidential Information intended only for the use of the intended recipient named above. If the reader of this message is not the intended recipient or the agent of the recipient authorized to open it and deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this electronic mail in error, please notify us by telephone and delete the original electronic mail from your system. If you have printed out this electronic mail after having received it in error, please return the printed version to us at the above address via the U.S. Postal Service.

# EXHIBIT C

**Arthur J. Murray**

| | |
|---|---|
| **From:** | Cristin Morris |
| **Sent:** | Friday, September 16, 2022 10:54 AM |
| **To:** | Arthur J. Murray |
| **Subject:** | FW: USA v. John Grier, III, Crim. 21-524 (JHR) |

**From:** Richardson, Jason (USANJ) <Jason.Richardson@usdoj.gov>
**Sent:** Friday, September 16, 2022 10:53 AM
**To:** Cristin Morris <cmorris@ALTERMAN-LAW.COM>
**Cc:** Stuart Alterman <SAlterman@Alterman-law.com>; Harteis, Lindsey (USANJ) <Lindsey.Harteis@usdoj.gov>
**Subject:** RE: USA v. John Grier, III, Crim. 21-524 (JHR)

This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Morris,

You did send it to me back in August.  We wrote our motion prior to receiving your email since it was due June 30.

Thank you for following up.

Jason

**From:** Cristin Morris <cmorris@ALTERMAN-LAW.COM>
**Sent:** Friday, September 16, 2022 10:48 AM
**To:** Richardson, Jason (USANJ) <JRichardson@usa.doj.gov>
**Cc:** Stuart Alterman <SAlterman@Alterman-law.com>
**Subject:** [EXTERNAL] USA v. John Grier, III, Crim. 21-524 (JHR)

Mr. Richardson:

In preparing responses to your Motion, please find attached our expert report and CV in this matter.

I do apologize as I thought that I had emailed same to you back on 08/19/22.  I must NOT have attached the report inadvertently.

Thank you.

Cristin Morris, Legal Assistant
ALTERMAN & ASSOCIATES, LLC
cmorris@alterman-law.com

MAIN OFFICE
8 SOUTH MAPLE AVENUE
MARLTON NJ, 08053
OFFICE TELEPHONE (856) 334-5737
OFFICE FACSIMILE (856) 334-5731
CELL (856) 905-6712

ADDITIONAL OFFICE
11 MULLER PLACE
LITTLE FALLS, NJ 07424
OFFICE TELEPHONE (973) 956-1621
OFFICE FACSIMILE (973) 956-1421

***CONFIDENTIALITY NOTICE*** The information contained in this electronic mail is Attorney privileged and Confidential Information intended only for the use of the intended recipient named above. If the reader of this message is not the intended recipient or the agent of the recipient authorized to open it and deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this electronic mail in error, please notify us by telephone and delete the original electronic mail from your system. If you have printed out this electronic mail after having received it in error, please return the printed version to us at the above address via the U.S. Postal Service.