UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph H. Rodriguez |
| | : | |
| v. | : | Criminal No. 21-524 (JHR) |
| | : | |
| JOHN GRIER, III | : | |

**BRIEF OF THE UNITED STATES IN SUPPORT OF
MOTION *IN LIMINE* TO EXCLUDE DEFENSE EXPERT**

The United States moves to exclude the testimony of defendant John Grier's proffered defense expert Emanuel Kapelsohn.  It is apparent that Kapelsohn's proposed testimony—which includes his personal views about what happened in this case, his own subjective legal conclusions that the defendant's actions were reasonable and appropriate, and other irrelevant and unhelpful testimony—is not the proper subject of expert testimony.  This Court should exclude the proffered testimony regarding the defendant's use of force under Fed. R. Evid. 702 because it will not assist the jury in understanding the evidence or determining a fact issue.  Further, the Court should also exclude the expert witness' testimony under Fed. R. Evid. 403 because his opinions state conclusions of law, and thus, tell the jury what result to reach in this case.  In particular, the proffered expert testimony that the defendant's actions constitute an appropriate use of force, given the circumstances, constitutes a legal conclusion on the issue to be decided by the jury and, therefore, is plainly inadmissible.

## BACKGROUND

On June 30, 2021, a federal grand jury sitting in Camden, New Jersey, returned a two-count Indictment.  The expert testimony proffered by the defendant appears to implicate both counts.

### A. Count One – Deprivation of Rights Under Color of Law

Count One of the Indictment charges defendant Grier with Deprivation of Rights Under Color of Law, in violation of Title 18, United States Code, Sections 242 and 2.  Specifically, Count One charges that on or about June 18, 2017, in Cumberland County, in the District of New Jersey, and elsewhere, the defendant, while acting under color of law, assaulted Marty Drummond, by unlawfully spraying Mr. Drummond twice in the face with Oleoresin Capsicum ("OC") spray while Mr. Drummond was handcuffed and shoving Mr. Drummond into a police vehicle, thereby willfully depriving Mr. Drummond of the right, secured and protected by the Fourth Amendment of the Constitution and laws of the United States, to be free from unreasonable seizure and unreasonable force.  This offense resulted in bodily injury to Mr. Drummond.

The elements of a violation of Section 242 are that the defendant: (1) was acting under color of law, (2) deprived Marty Drummond of his right to be free from unreasonable search and seizure, (3) acted willfully in depriving Marty Drummond of this right, and (4) caused bodily harm to Marty Drummond.  *United States v. Lanier*, 520 U.S. 259, 264 (1997) ("Section 242 is a Reconstruction Era civil rights

statute making it criminal to act (1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States."); *United States v. Johnstone*, 107 F.3d 200, 210 (3d Cir. 1997) (generally discussing statutory elements).

With respect to the second element, the specific right that is the subject of the violation is the victim's right to be free from the use of unreasonable force by one acting under color of law.  This is a right protected under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 394, 396-97 (1989) (holding that Fourth Amendment governs an arrestee's excessive force claims); *Curley v. Klem,* 499 F.3d 199, 206-07 (3d Cir. 2007) ("In an excessive force case, whether there is a constitutional violation is 'properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'") (*citing Graham*, 490 U.S. at 388).

The term "unreasonable force" means force that has no legitimate law enforcement purpose.  *See Curley*, 499 F.3d at 206 ("The relevant inquiry is the reasonableness of the officer's belief as to the appropriate level of force, which should be judged from the officer's on-scene perspective, and not in the 20/20 vision of hindsight."); *Walker v. Cullen*, 491 F. App'x 273, 277 (3d Cir. 2012) (not precedential) ("In determining whether the force used to affect a seizure is excessive, the question is whether, under the totality of the circumstances, the officers' actions were objectively reasonable.  Factors to consider include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

attempting to evade arrest by flight.  It is also important to consider whether the physical force applied was of such an extent as to lead to injury.") (internal quotations and citations omitted).  Retribution, retaliation, and deterrence are not legitimate law enforcement purposes.  Thus, a jury may find that force that is not necessary to accomplish a legitimate law enforcement purpose is unreasonable, if the use of such force was intended to punish past misbehavior or to deter future misbehavior.  *See Graham*, 490 U.S. at 388.

In making that determination, the jury will be instructed to consider all the circumstances from the point of view of an ordinary and reasonable officer on the scene.  *See Graham*, 490 U.S. at 396 (explaining that the Fourth Amendment governs an arrestee's excessive force claim; holding that reasonableness must be judged from perspective of reasonable officer on the scene; and stating that "[p]roper application [of the Fourth Amendment's "test of reasonableness"] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"); *Curley*, 499 F.3d at 206 ("The relevant inquiry is the reasonableness of the officer's belief as to the appropriate level of force.").

Section 242 requires proof that the defendant committed his acts or omissions with a bad purpose or improper motive to disobey or disregard the law, specifically intending to do what the law forbids or to fail to do what the law requires.  *See*

*Screws v. United States*, 325 U.S. 91, 106 (1945).  The Government need not prove that the defendant was "thinking in constitutional terms."  *Id.*  The requisite purpose to deprive someone of a plainly established constitutional right may be inferred from blatantly wrongful conduct that in fact causes such a deprivation.  *Id.* In determining whether an act is willful, a jury may consider "all the attendant circumstances."  *Id.* at 107.

### B. <u>Count Two – Falsification of Records</u>

Count Two charges Falsification of Records, in violation of Title 18, United States Code, Section 1519.  Count Two charge the defendant for the falsification of his Supplemental Police Report.

The elements of a violation of Title 18, United States Code, Section 1519 are (1) that the defendant knowingly concealed, covered up, falsified, or made false entries on a document or records; (2) that the defendant acted with the intent to impede, obstruct, or influence an investigation or proper administration of any matter or in relation to or in contemplation of any such matter or case; and (3) that the investigation or matter was within the jurisdiction of a department or agency of the United States.  *See United States v. Moyer*, 674 F.3d 192, 206-7 (3d Cir. 2012); Fifth Circuit Pattern Jury Instructions (Criminal) 2.65 (2015) ("Fifth Circuit"); Eighth Circuit, Manual of Model Jury Instructions (Criminal) § 6.18.1519 (2014) ("Eighth Circuit")).

With respect to the false entry, either an omission of material information or an actual misstatement will qualify for a false entry. *United States v. Weidner*, 437

F.3d 1023, 1037 (10th Cir. 2006); *United States v. Jackson*, 621 F.2d 216, 219 (5th Cir. 1980); *United States v. Copple*, 827 F.2d 1182, 1187 (8th Cir. 1987).

## C. <u>The Expert Report</u>

On August 19, 2022, the defendant provided the Government with a copy of a report authored by Emanuel Kapelsohn. *See* Gov. Ex. 1, Kapelsohn Report and Curriculum Vitae. This document noticed Kapelsohn as an expert under Rule 702 and offered a number of opinions regarding the defendant's use of force against the victim, Marty Drummond, in this case.

According to his report, Kapelsohn is a practicing attorney with the firm of Lesavoy Butz & Seitz LLC in Allentown, Pennsylvania and the president of the Peregrine Corporation. Kapelsohn's report recounts his various qualifications regarding use of force, the vast majority of which appears to involve firearms, firearms instruction, and shooting scene reconstruction. *See* Gov. Ex. 1 at 2-9. While Kapelsohn also proffers that he previously was certified as an OC spray instructor, that certification was in "1988 to the mid-1990's"—*i.e.*, approximately 30 years ago. *See Id.* at 9.

After the review of Kapelsohn's use-of-force qualifications and experience, Kapelsohn's report provides the following "Executive Summary" of his opinion:

> Under the totality of the circumstances, the use of OC spray ("pepper spray") by [the defendant] against Marty Drummond was an objectively reasonable use of force, in keeping with widely accepted law enforcement use of force standards, and force such as other reasonable officers on the scene might use.

*Id.* at 17.

Kapelsohn then sets forth a one-sided presentation of his own version of the facts, sprinkled with gratuitous, defense-skewed commentary,[1] and ultimately offers the following five conclusions:

1. Provided that [defendant] reasonably believed that Drummond was continuing to resist police control when, instead of getting into the police car as he was told to do, Drummond turned back toward the officers and asked again, "What am I under arrest for?", or if [defendant] believed that these actions by Drummond placed the officers in danger of likely physical resistance of assault by Drummond, [defendant's] use of OC spray against Drummond on June 18, 2017 was consistent with widely-accepted law enforcement use of force training, with the use of OC spray by police officers throughout the United States, and with the New Jersey Attorney General's Use of Force Policy.

2. The use of OC spray by [defendant] on the subject occasion was a use of force such as other reasonable police officers on the scene would employ.

3. OC sprayed in one's face, such as the application of OC to Drummond by [defendant], can be painful, can temporarily affect one's airways, and can be temporarily incapacitating, but it does not create injury in the vast majority of cases, as shown by the widespread use of OC for the past 30-plus years, scientific and medical research and studies into the effects of OC, and the spraying of police recruits, police officers, security and military personnel, and others with OC in training.

4. [Defendant's] use of the larger cannister of OC spray to spray Drummond, rather than using the duty belt-sized cannister, did not make the level of [defendant's] use of force against Drummond a more extreme use of force than if the smaller OC unit had been used. The active ingredient in the two cannisters is the same, and there is no reason an individual subject cannot properly and safely be sprayed with OC using the larger cannister. In fact, in crowd control situations the larger cannister is often used to spray individual subjects, as was done here.

5. [Defendant's] application of OC to Drummond in two separate quarter-second bursts, the first of which did not appear to have been effective, was a proper

---

[1]     For example, during the section of Kapelsohn's report titled "Summary of the Incident," Kapelsohn writes, "Throughout all of this abusive tirade by Drummond, Ptl. Grier remained calm, polite, gentlemanly and professional in his demeanor." *See id.* at 14.

manner of using OC as commonly trained to police and others, and was not excessive in terms of the amount or duration of the spray.

*Id.* at 34-35.

Pending voir dire, the Government does not dispute that Kapelsohn has some expertise in the generalized field of use of force (though, as previously noted, his expertise in the use of OC spray appears to be both dated and limited).   However, most, if not all, of Kapelsohn's proffered testimony is outside the realm of proper expert testimony because it constitutes legal conclusions about the ultimate issues for the jury; it involves medical testimony outside the area of Kapelsohn's expertise; it purports to reflect the state of mind of the defendant and/or others; it rests on policing standards of conduct that do not "fit" this case; it sets forth Kapelsohn's own, defense-oriented view of the facts of the case rather than any subject of true expert testimony; or it is otherwise confusing, unsupported, or unhelpful to the jury. Accordingly, Kapelsohn's testimony should be precluded or severely limited by the Court.

## LEGAL ARGUMENT

### I.   LEGAL STANDARDS FOR THE ADMISSION OF EXPERT TESTIMONY IN EXCESSIVE FORCE CASES

A trial judge acts as a gatekeeper to ensure that expert testimony, among other things, assists the jury and does not invade the province of the jury or the trial judge.   *See, e.g., Schneider ex rel. Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).   To that end, the admission of expert testimony is governed by Rule 702 and analyzed under the framework set out by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (holding that scientific expert testimony

is admissible only if it "rests on a reliable foundation and is relevant to the task at hand") and *Kuhmo Tire Co. v. Carmichael*, 526 U.S.137, 141 (1999) (extending *Daubert* to non-scientific testimony and requiring "'technical' and 'otherspecialized' knowledge").  Rule 702 provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert byknowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has appliedthe principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit."  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted).  To be qualified, the witness must possess a "broad range of knowledge, skills, and training" to qualify as an expert.  *In re: Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994).  To be reliable, the testimony must "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'."  Regarding the "fit" element of the analysis, an expert must "apply his experience reliably to the facts; his opinions must be well-reasoned, grounded in his experience, and not speculative."  *Roberson v. City of Philadelphia*, Civ. A. No. 99-3574, 2001 WL 210294, at *4 (E.D.Pa. Mar. 1, 2001) (internal quotation omitted).

The party offering the expert testimony has the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance

of the evidence. *Paldillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). "[A]*ny step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible.*" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) (emphasis in original).

In determining whether proffered expert testimony is admissible, courts must consider the two-pronged test of reliability and relevance. *United States v. Davis*, 397 F.3d 173, 178 (3d Cir. 2005); *see also United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003) (holding that the appropriate inquiry is "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute") (quoting *Daubert*, 509 U.S. at 591).

Expert testimony that is admissible under Rule 702, however, still may be excluded under Rule 403. *See Daubert*, 509 U.S. at 595 (holding that "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules" and citing *inter alia* Rule 403). Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403; *see also United States v. Downing*, 753 F.2d 1224, 1226 (3d Cir. 1985); *United States v. Bowman*, 302 F.3d 1228, 1239 (11th Cir. 2002). "Expert testimony must be relevant . . . but even relevant expert testimony, like all relevant evidence, may be excluded under Fed. R. Evid. 403, if its probative value is outweighed by the danger that it would confuse the jury,

be unfairly prejudicial, cause undue delay, waste judicial resources, or be cumulative." *United States v. Onumonu*, 967 F.2d782 (2d Cir. 1992).

### a. Proffered Testimony That The Defendant Acted Reasonably Is An Inadmissible Legal Conclusion

Expert testimony that may otherwise meet the standard of Rule 702 is nevertheless inadmissible where it works only to suggest a legal conclusion peculiarly within the jury's province. While Rule 704 acknowledges that opinion testimony is not automatically objectionable just because it embraces an ultimate issue, such opinions are only admissible when they are helpful to the trier of fact. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."); *see also* Fed. R. Evid. 704, Advisory Comm. Notes ("Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach"); 4 Weinstein's Federal Evidence 704.04[2][a] (2003) ("The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness. The testimony supplies the jury with no information other than the witness's view of how the verdict should read.").

Courts have routinely excluded experts from testifying about whether an officer's actions were reasonable or unreasonable in a given scenario, because that

is a legal conclusion regarding an ultimate issue properly before the jury.  Such

was the case in *Smith v. New Jersey*, 2013 WL 3658786 (D.N.J. July 11, 2013), a

civil case brought in this District under 42 U.S.C. § 1983.  In *Smith,* then-Chief

Judge Simandle granted a motion *in limine* and barred the defendant's proffered

testimony of a police practices expert regarding whether use of force was

reasonable:

> The Court must exclude expert witness testimony on police practices when
> such testimony involve[s] only [the expert's] views concerning the
> reasonableness of the officers' conduct in light of Fourth Amendment
> standards because this testimony is not a fact-based opinion, but a statement
> of legal conclusions.  The legal conclusions are for the court to make.

*Id.* at *4 (citations and quotation marks omitted).  *See also Brown v. Burghart*, 88

Fed. R. Evid. Serv. 647 (E.D.Pa. 2012) (holding that expert could not testify as to

whether officer's use of force was reasonable because it would invade the province of

the jury); *Quagliarello v. Dewees*, 802 F. Supp. 2d 620 (E.D. Pa. 2011) (holding that

plaintiff arrestee's expert was not permitted to testify as to whether the arresting

officer used unreasonable force); *United States v. Leo*, 941 F.2d 181, 196 (3d Cir.

1991) (explaining that "it is not permissible for a witness to testify as to the

governing law since it is the district court's duty to explain the law to the jury").

The Court in *Smith* also barred expert opinions about whether the officer

complied with generally accepted policing practices because those opinions "do not

fit the issues in this case."  *Id.*  The Court explained:

> No issue in this case depends on establishing normal police practices or a
> deviation therefrom; the standards of conduct are measured by the U.S.
> Constitution and by the analogous provisions of the New Jersey Constitution.
> Those provisions do not constitutionalize tort law; whether a particular

officer followed accepted police practices is not the inquiry . . . .  In short, Rule 702, Fed. R. Evid., does not permit the testimony of a police practices expert who is rendering opinions about whether particular conduct violated the relevant constitutional provisions.

*Id.* at *5; *Wood v. Showers*, 822 Fed. Appx. 122, 124 (3d Cir. 2010) (holding the district court did not abuse discretion by barring use of force expert from offering testimony regarding whether officer acted in conformity with policing standards of multiple organizations when the expert report did not describe those organizations, the process by which they developed use of force standards, or the general acceptance of those standards or establish the reliability of the standards).[2]

In a non-precedential (but frequently cited) ruling in the § 1983 context, a Third Circuit panel upheld the exclusion of expert testimony about whether a deputy's "actions were reasonable and about what a reasonable officer would have done." *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013) (not precedential). The court based its ruling on the well-established principle that Rule 704 "prohibits

---

[2]      In contrast, the Government intends to present testimony of a Bridgeton Police Department trainer, who will describe the training the officers received, along with some of the actual training materials as evidence of the defendant's state of mind.  *See, e.g.*, *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) ("We have before recognized that evidence of departmental policies can be relevant to show intent in § 242 cases. Other circuit courts have as well. Those decisions, expressly or impliedly, acknowledge that an officer's training can help inform his state of mind in certain circumstances . . . .  If, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully.") (citations omitted); *United States v. Brown*, 654 F. App'x 896, 904 (10th Cir. 2016) ("The fact that Defendants were present during … training sessions … shows that Defendants were aware that official protocol limited the use of force to instances when an inmate was acting in a threatening manner. That Defendants disregarded their training on the appropriate use of force is admissible to show that Defendants acted willfully [under § 242].").

experts from opining about the ultimate legal conclusion or about the law or legal standards." *Id.*

Other courts within this District similarly have barred experts in § 1983 cases from testifying about whether police conduct was reasonable. *See, e.g., Beam v. Township of Pemberton, et. al.*, 2023 W.L. 2496460 at *10 (D.N.J. Mar. 14, 2023) (Slomsky, J.) (excluding expert opinion on use of use of force because the expert "dr[ew] legal conclusions that embrace[d] the ultimate issue to be decided by the trier of fact"); *Fried v. Tetzlaff*, 2014 WL 1095735, at*10 (D.N.J. Mar. 19, 2014) (Bumb, J.) (refusing to consider expert's opinion on the issue of whether officer used excessive force), *vacated in part on reconsideration*, 2014 WL 2861098 (D.N.J. June 24, 2014); *Holliday v. City of Elizabeth*, 2018 WL 953346, at *14-16 (D.N.J. Feb. 20, 2018) (Vazquez, J.) (excluding expert report on reasonableness of police conduct); *see also Perez-Benitez v. Smith*, 2019 WL 3548866, at *2-4 (E.D. Pa. Aug. 2, 2019) (excluding defense expert's testimony that defendant's use of force was reasonable);*Damiani v. Duffy*, 277 F. Supp. 3d 692, 702 (D. Del. 2017) (explaining that the court "will not consider [the] expert report, which contains opinions that speak to the objective reasonableness of Defendants' actions"); *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Ca. 2015) (whether use of force was excessive is a question for the jury on which expert testimony is not helpful).[3]

---

[3]     Some decisions have allowed expert testimony relating to reasonableness, at times, either because both parties sought the admission of such testimony or because of the particular issues involved in the case. *See, e.g., Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 807-10 (11th Cir. 2017) (no error in allowing expert to rebut testimony of plaintiff's expert that officers' behavior unreasonable).

This principle has been extended outside of the § 1983 context to exclude expert testimony in criminal cases, including excessive force prosecutions in this District under 18 U.S.C. § 242.  For example, recently, in *United States v. Villanueva*, the defendants proffered expert testimony for two different use of force experts.  These two experts had reviewed footage from officers' body-worn cameras, as well as written summaries of the corresponding police reports, and had then set forth the experts' own views regarding the reasonableness of the defendant's conduct.  604 F.Supp. 3d. 252, 257-58 (D.N.J. 2022).  Judge Martinotti granted the Government's motion to exclude the expert testimony, holding that "the experts' conclusions regarding the reasonableness of the Defendants' actions [were] inadmissible" and the experts' reports "impl[ied] some level of legal analysis on their part."  *Id.*  *See also United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (the affirming the district court's exclusion of an expert's opinion that the defendant officer acted reasonably, as the expert's opinion "would merely tell the jury what result to reach.") (citation and quotation marks omitted); *United States v. Williams*, 343 F.3d 423, 435 (5th. Cir. 2003) (holding that in a section 242 excessive force case, an expert may not opine on whether a particular use of force is "reasonable" because "reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion"); *United States v. Krug*, 2019 WL 3162091, at *3 (W.D.N.Y. July 16,

---

That is not the case here and, in any event, the Government submits that the analysis in *Smith* and *Patrick* excluding expert testimony is more authoritative and compelling.

2019) (excluding the defense experts, who would have given testimony relating to the reasonableness of the defendant officer's actions, because "the practical effect of the testimony would be to provide a legal conclusion or suggest to the jury what result to reach."); *see also United States v. Rodella*, 2014 WL 6634310, at \*26-29 (D.N.M. Nov. 19, 2014), *aff'd*, 804 F.3d 1317 (10th Cir. 2015) (excluding an expert proffered to testify about whether the defendant officer acted reasonably).[4]

The proffered testimony opinions on the defendant's use of OC spray as being "objectively reasonable use of force," Gov. Ex. 1 at 17, and national police standards because they involve some level of legal analysis, legal conclusion and impermissibly tell the jury what result to reach. Moreover, Kapelsohn's opinion that defendant's behavior was reasonable in light of certain norms and standards, without providing citations to any such trainings or standards, is inextricably linked to his purported version of the events in the case.  The premises on which he bases his conclusions that defendant's actions were in conformity with certain standards is based on assumptions concerning the states of mind of the actors,

---

[4]     Officers who were present, however, may testify about their observations and conclusions about whether the defendant's use of force was excessive, as they are testifying as fact witnesses, not experts, and their opinion testimony is authorized by Rule 701.  *See, e.g., United States v. Smith*, 811 F.3d 907, 909 (7th Cir. 2016); *United States v. Cowden*, 2016 WL 5794763, at \* 5 (N.D. W.Va. Oct. 4, 2016).  As Judge Posner put it: "Anyone who saw what the police saw [the defendant] doing to [the victims] would have been able to offer an opinion on whether the force was reasonable . . . ."  811 F.3d at 909.

Here, the Government anticipates that other on-scene officers will testify about their own observations and conclusions about whether the defendant's use of force against the victim, including his use of OC spray, was excessive.

effects of the OC spray, and other factual findings that are the proper province of the jury and the jury alone. *Villanueva*, 604 F.Supp.3d at 257-58; *Brown*, 871 F.3d at 539.

Kapelsohn's opinion that defendant's use of OC spray "was not excessive in terms of the amount or duration" of the spray and that his action was "consistent with widely-accepted law enforcement use of force training, with the use of OC spray by police officers throughout the United States, and with the New Jersey Attorney General's Use of Force Policy," should be precluded because "Rule 702, Fed. R. Evid., does not permit the testimony of a police practices expert who is rendering opinions about whether particular conduct violated the relevant constitutional provisions." *Smith*, 2013 WL 3658786 at *5; *Wood*, 822 Fed. Appx. at 124.[5] As should his opinion that the use of OC spray "was a use of force such as other reasonable police officers on the scene would employ" is a legal conclusion and not the proper subject of expert testimony.

### b.  Expert Cannot Testify Regarding The Defendant's State of Mind

Evidence offered to prove the state of mind of the defendant to the extent that it goes to an element of the offense is inadmissible.  Fed. R. Evid. 704 specifically states that: "No expert witness testifying with respect to the mental

---

[5]      Should the Court allow Kapelsohn to testify that defendant's conduct was reasonable and consistent with the NJ Attorney General's Use of Force guidelines, the Government will seek permission to cross-examine Kapelsohn about whether he considered the Bridgeton Police Department's Internal Affairs findings that the defendant used excessive force against Mr. Drummond and that he violated those guidelines.  *See* Gov. Ex. 2, Bridgeton Police Department, Professional Standards Bureau Internal Affairs Division, Investigation Review Form I-027-17.

state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto."
In this case, as outlined above, one of the elements for a violation of Section 242 is that the defendants acted willfully.  Courts of appeals consistently have held that testimony about a defendant's state of mind in cases where the prosecution must prove a particular state of mind as part of the crime charges are impermissible. *See, e.g.*, *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001); *United States v. Gilmore*,  837 F. App'x 101, 104 (3d Cir. 2020) (upholding decision to exclude expert testimony on the subject of willfullness); *United States v. Shin*, 2012 WL 1377597, at *3 (D.N.J. Apr. 18, 2012) (Bumb, J.); *United States v. Dupre*, 462 F.3d 131, 138 (2d Cir. 2006) (nothing that  "we share the District Court's concern that the proffered evidence [a psychological report] might have constituted an impermissible opinion about the "ultimate issue" of whether Dupre possessed the mental state constituting an element of wire fraud"); *United States v. Mikutowicz*, 365 F.3d 65, 72 (1st Cir. 2004) ("[E]xpert may not testify to mental state of defendant where mental state is an element of the charged offense.") (citing Fed. R. Evid. 704(b)); *United States v. Windfelder*, 790 F.2d 576, 581 (7th Cir. 1986) (noting that expert testimony is impermissible where is "state[s] an opinion as to the defendant's knowledge or willfulness, a mental state which constitutes an element of the crimes charged").

The court in *Villanueva* also excluded the experts' proffered testimony regarding the defendants' mental state, including their testimony regarding whether the defendant's forceful strikes were intended to gain the victim's compliance and their testimony regarding what the defendant did or did not know about the factual context at the time he made the strikes.  *Id.* at 258-59.  The *Villanueva* court stated, "The opinions of [the proffered defense experts] are designed to address Defendants' intent or mental state.  If their testimony is credited, it necessarily follows Defendants lacked the requisite *mens rea* and, therefore, the testimony is impermissible under Rule 704."  *Id.* at 259 (internal citations omitted).

The jury is perfectly capable of deciding on its own the state of mind of the defendant and the other officers; that is what juries do in every criminal trial.  *See Shin*, 2012 WL 1377597, at*3 ("Expert testimony was unnecessary because it was within the jury's own competency to assess the Defendant's intent."); *Smith*, 2013 WL 3658786 at *6 (barring police practices expert from testifying about officers' state of mind, as the expert "is without the psychological or other relevant background or expertise to testify to the state of mind") (quotation marks and citation omitted).

Kapelsohn's opinions are essentially useless because they are intertwined with impermissible credibility and factual determinations littered throughout his report. Kapelsohn's opinion that the defendant "reasonably believed" that Drummond was "resist[ing] police control;"  that the first OC burst "did not appear

19

to have been effective;" that the "use of the larger OC cannister was logical and not improper" or that the defendant "believed that these actions by Drummond placed the officers in danger of likely physical resistance of assault" as a justification for spraying Drummond a second time while he was handcuffed and the two hand shove of Drummond into the police vehicle, speak to defendant's state of mind, and appear to be offered to support the defense that the defendant did not act willfully or with bad intent.[6]  Moreover, his self-serving evaluation of defendant's behavior, such as the defendant "remained calm, polite, gentlemanly and professional . . . contrary to [the victim's] protestations" is not helpful to the jury nor the proper subject of expert testimony.[7]

Kapelsohn should be barred from testifying regarding the defendant's mental state as it is an element of the offense charged and a question to be decided by the jury.

---

[6]     Kapelsohn should similarly be barred from speculating as to what was in Drummond's mind as well. For example, to justify the assault, he opines that when Drummond asked why he was being arrested that "the question might not have been an honestly asked question, but rather a distraction or diversion technique to allow Drummond to move toward the police for . . . the purposes of effecting a physical attack against them."  Gov. Ex. 1 at 31-32.

[7]     Kapelson has recently been admonished that he was not allowed to provide such testimony.  See *Garrit v. City of Chicago*, 2022 WL 124554 (N.D. Ill. Jan. 13, 2022), *10 (ruling that Kapelsohn may not testify regarding the credibility or relevance of another witness' testimony and citing the 7th Circuit authority for the proposition that "[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses.") (citation omitted).

### c. The Expert should be Precluded From Referencing Otherwise Inadmissible Evidence

Rule 703 provides that if an expert reasonably relies upon otherwise inadmissible evidence in forming his or her expert opinion, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.  This reverse 403 balancing standard—for the evidence to be admissible, its probative value must substantially outweigh its prejudicial effect, not the other way around—prevents parties from using expert witnesses to circumvent the Rules of Evidence. Cf. United States v. Johnson, 587 F.3d 625, 635 (4th Cir. 2009) ("Allowing a witness simply to parrot "out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion" would provide an end run around *Crawford*."). To avoid that problem, Rule 703 embodies "a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose." Fed. R. Evid. 703 advisory committee notes.

The expert report contains a five-page "Facts" portion which purports to detail the facts of the incident. Gov. Ex. 1 at 12-17. In drafting the fact section of his report, the defense expert explicitly and implicitly credited some accounts of this incident over others.  Most of the statements and reports are inadmissible hearsay. While an expert may, in certain limited circumstances, discuss inadmissible materials upon which his opinion was based, he may only do so when the probative value of doing so would substantially outweigh any prejudice. Fed. R. Evid. 703; *see*

*also Pineda v. Ford Motor Co.*, 520 F.3d 237, 247 n. 14 (noting that probative value must substantially outweigh prejudicial effect and stating that Rule 703 balancing test "clearly establishes a presumption against disclosure"); *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, 2012 WL 6562221 at \*16 (W.D.Pa. 2012) (same). Here, a use of force expert's value to the jury is not in offering and crediting some statements over others, but rather, is in explaining principles on the use of force so that the jury may apply those principles to the testimony that they themselves have heard and credited. *See Jackson v City of Pittsburgh, Pa.*, 2010 WL 3222137 at \*14 (W.D.Pa. 2010) (ruling that use of force expert report and opinion could not come into evidence because expert impermissibly weighed credibility and resolved factual disputes). Thus, there would be no probative value in allowing the defense expert to testify regarding the statements upon which is opinion is based.

Aside from having no probative value, there are two additional problems in allowing the defense expert to disclose these statements and make findings based upon them. First, allowing the defense expert to disclose and discuss these statements has significant potential for confusing jurors and allowing them to base their verdict on facts not in evidence. This is because the statements themselves will not be in evidence, but the expert's discussion of the statements will.

Another equally serious danger is that doing so will allow the defense expert to invade the jury's role as the sole factfinders. In discussing the statements and reports upon which he based his report, the defense expert will be selecting, crediting, and discrediting portions of many statements from many witnesses. It

will be crucial for the jury to determine which witness accounts of the incident, and which portions of these accounts, should be credited in determining whether the defendant's actions were objectively reasonable or justified.

While the use of force expert can offer opinions in response to a properly formulated hypothetical questions, those hypothetical questions "must be founded on facts already in evidence and they must not be phrased in a manner requesting that the expert testify on the ultimate legal issue of whether the force used by the officers was 'reasonable." *Id.* at 15. *See also, Thomas v. Barze*, 57 F.Supp. 3d 1040, 1059 (D. Minn. 2014) (explaining that an expert "can testify to his opinion about a certain action by [a defendant-officer] in a certain circumstance, assuming that those are the facts, would be consistent with police practices"). The Government has no objection to the defendant's use of force expert explaining his understanding on the rules of the use of force and the application of those rules of force in hypothetical situations. The Government also has no objection to the defense modeling hypothetical questions upon facts fairly contained in the record. But the defendant expert cannot be allowed to select and credit portions of multiple out-of-court statements by witnesses, many of whom are expected to be trial witnesses, because that would allow him to make precisely the kind of credibility determination that the jury alone must make. Therefore, the court should exclude any testimony regarding inadmissible statements or any statements not in evidence.

### d. The Defense Expert's Proposed Testimony About What Happened Is Inadmissible.

In addition to his inadmissible opinions that the defendant's actions were objectively reasonable and as to the defendant's mental state, Kapelsohn's reports contain a version of the events in question, based on a one-sided, defense-oriented interpretation of the body worn cameras and written police reports.  Kapelsohn's report is replete with examples, such as, "it appears that [Drummond] clearly understood that he was being arrested for drunk driving . . . ;" "the video appears to show that Drummond leaned down over the car's hood voluntarily;" the OC spray "appears to be ineffective;" "approximately ¼ second" spray; Drummond was "braced against the edge of the car's back seat;" and "[f]rom the video, it appears that [the defendant] was perhaps 5-7 feet away from Drummond when he sprayed Drummond with OC."

Courts have rejected attempts by proposed experts to summarize the factual events surrounding excessive force cases and give their own interpretation of what happened.  In *Holliday v. City of Elizabeth*, for example, the court found "that the conclusions in [the expert]'s report regarding hotly disputed facts as to what happened in the club parking lot between Plaintiff and [the officer] are not subject to expert testimony; they are classic factual issues for the jury to decide."  2018 WL 953346 at *16.  Another court held that an expert "may not opine on what happened" based on interviews and other evidence because that "invades the province of the jury and presents hearsay evidence as expert opinion."  *United States v. Harvey*, 405 F. Supp.3d 667, 672 (S.D. Miss. 2019); *see also Shin*, 2012 WL

1377597, at *3 (expert testimony inappropriate for issues jury can decide on its own).

Moreover, jurors are capable of reviewing body camera videos and determining what happened. *See Villanueva*, 604 F. Supp. 3d at 259 (excluding experts summaries and interpretations of video footage because the jury "can review the camera footage" and decide what happened); *Baily v. Ramon*, 2022 WL 1765864 at *5 (W.D. Tx Nov. 21, 2022) (collecting cases) ("A number of courts have address expert testimony on video recordings and have concluded that the expert should not be permitted to interpret the video's contents where the expert is no better suited than a lay person to do so."). Thus, there would be no probative value in allowing the defense expert to testify regarding the statements upon which is opinion is based or what he sees in the body camera videos.

The jurors here will see the evidence, including body worn camera footage from multiple officers' vantage points that captures the entirety of the events in question in this case, hear the testimony of the officers involved, and can reach their own conclusions based on the officers' testimony, the video footage and the other evidence. Kapelsohn – and his attempts to speak for the defendant and offer closing arguments from the stand – will not assist the trier of fact. Therefore, he should be precluded from doing so.

## II. THE COURT SHOULD PRECLUDE KAPELSOHN'S OPINIONS ON OTHER THINGS WHICH HE IS NOT QUALIFIED TO TESTIFY ABOUT

### a. The Defense Expert's Should Not Be Permitted To Opine On The Medical Effects Of OC Spray Or His Own Experience Of Being Sprayed With OC Spray.

Kapelsohn's proffered testimony that being sprayed with OC spray "does not create injury in the vast majority of cases" and that "the first [application of OC spray] did not appear to have been effective . . . was not excessive in terms of the amount or duration of the spray." *See* Gov. Ex. 1 at 35. Kapelsohn is not a medical doctor and his report offers no basis for him to provide commentary or conclusions concerning the effects and symptoms of OC spray.

He also tried to justify the defendant's use of the crowd control sized container of OC spray, instead of the smaller canister that was on the defendant's duty belt. *Id.* at 32-34. Further, to the extent that he wishes to share with the jury his own experiences – either being sprayed with OC spray – or spraying others, he should be prohibited from doing so as that information will not assist the trier of fact in determining the facts at issue in this case, and certainly will not assist them as he has offered no experience using the brand and type of product at issue in this case. Finally, to the extent that Kapelsohn relies on unspecified "scientific and medical research" to offer this opinion, he has not established that that literature is generally accepted or peer reviewed. Plainly, he lacks the requisite expertise to offer these opinions. *Daubert*, 509 U.S. at 589 (FRE 702 imposes a "gatekeeping" obligation on the trial judge to "ensure that any and all scientific testimony…is not only relevant, but reliable"); *see also Valtierra v. City of Los Angeles*, 99 F.Supp. 3d

1190,1197 (C.D.Ca. 2015) (holding that retired police officer, who read a taser user manual but did not have medical credentials or experience, was not qualified to opine on medical effects of taser use nor to any purported knowledge of the taser product).

Therefore, Kapelsohn should be barred from offering his opinion on what effects the OC Spray had on Drummond.

> **b.** **The Defense Expert's Proposed Testimony About Whether Use Of Crowd Control OC Spray Was Extreme, Or In Excess Of The Use Of Force Associated With The Smaller OC Unit Defendant Had Available As He Has Offered No Foundation For That Opinion Is Inadmissible.**

Kapelsohn opines that the use of the larger "crowd control" unit of OC spray did not amount to a more excessive use of force than had he used the smaller unit the defendant had available. *See* Gov. Ex. 1 at 35. Citing no data comparing the concentration levels, quantity or concentration of spray released, or otherwise noting the instructions or indications for use of traditional versus crowd control grade OC spray, Kapelsohn opines that the defendant did not employ any more force with the crowd control OC spray than would have been used with traditional OC spray. This conclusion is precisely the unsupported speculation that Daubert aims to exclude. *See In re: Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741-43 (find that to be qualified as an expert, the witness must possess a "broad range of knowledge, skills, and training").

Because Kapelsohn has not established a reliable basis for this conclusion, not compared the two products, and not professed a knowledge of how the two compare, he should not be permitted to offer conjecture that is not relevant to the

27

facts at issue or helpful to the jury.  He should therefore be barred from offering the fourth opinion in his report.

## CONCLUSION

Defense expert Kapelsohn's proposed testimony is comprised of nothing more than inadmissible legal conclusions, personal interpretations of what happened, and speculation about what officers subjectively thought and intended, all of which the jury can and will decide on its own.  The testimony of the expert, as proffered in his report, should be excluded in the entirety.

Respectfully submitted,

PHILIP SELLINGER
United States Attorney

By:    JASON M. RICHARDSON
LINDSEY R. HARTEIS
Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this day I caused to be served, via the

Court's Electronic Filing System, a copy of the foregoing Brief of the United States

in Support of Motion *In Limine* to Exclude Defense Expert on:

Stuart J. Alterman, Esq.
Alterman & Associates, LLC
8 South Maple Avenue
Marlton, New Jersey 08053

Stacy A. Biancamano, Esq.
Daniel Holzapfel, Esq.
Biancamano Law
42 A North 20th Street
Kenilworth, New Jersey 07033

Attorney for Defendant John Grier

_____
JASON M. RICHARDSON
Assistant U.S. Attorney

Dated: May 8, 2023