UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

       Plaintiff

v.

JOHN GRIER III,

       Defendant

Criminal No. 21-524 (JHR)

**BRIEF OF DEFENDANT JOHN GRIER, III, IN OPPOSITION TO THE GOVERNMENT'S *IN LIMINE* MOTIONS TO: (A) EXCLUDE THE DEFENSE EXPERT; AND (B) PERMIT THE OTHER POLICE OFFICERS TO GIVE THEIR OPINIONS AS LAY WITNESSES.**

The government moves *in limine* to exclude the testimony of Emanuel Kapelsohn[1] as an expert in police use of force. The government then seeks to admit lay witness opinion testimony of the other officers at the scene on the issue of the reasonableness of defendant's use of force. So, the government argues that its

---

[1] Emanuel Kapelsohn is the President of The Peregrine Corporation, Specialists in Defense Dynamics. Per his report: "I have been a professional firearms and use of force instructor for roughly 42 years, during which time I have trained what I conservatively estimate to be over 17,000 individuals, including police officers, federal agents, security officers, military personnel, and private citizens…. I have also been certified as an instructor in the use of pepper spray, more properly described as 'OC' (oleoresin capsicum) spray, and I have for many years conducted training classes in the use of various OC products." (Expert Report p. 2)

on-scene fact witnesses should be permitted to provide *opinion* testimony against the defendant while at the same time shielding the jury from expert opinion testimony on the very same topics. The government's motions should be denied.

**A. The Motion To Exclude Expert Testimony Should Be Denied.**

The government first seeks to bar the expert testimony not on substantive grounds, but based on a purported violation of Federal Rule of Criminal Procedure 16. In relevant part, that Rule provides:

> At the government's request, the defendant must disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial[.]

Rule 16(b)(1)(C)(i). But, as the government acknowledges in its motion, the Rule does not set forth a deadline for disclosure. Rather, "[t]he court, by order or local rule, must set a time for the defendant to make the defendant's disclosures." Rule 16(b)(1)(C)(ii). Significantly, the Rule further informs: "The time must be sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." *Id*.

Accepting *arguendo* that defendant has provided the government with the expert report (less than) two months beyond this Court's scheduling order, the government's motion suggests not a hint of

prejudice or sharp practice. Indeed, the government has had Kapelsohn's report for over a year now. *Cf. Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 627-29 (3d Cir. 1993) (finding no abuse of trial court's discretion in barring defense where notice of intent filed three working days before trial).

Additionally, the government seeks an order barring Kapelsohn's proposed testimony on the basis that it "is not the proper subject of expert testimony." The government argues that the testimony would not assist the jury in understanding the evidence or determining a fact issue, as required by *Fed. R. Evid*. 702. Further, the government contends that the testimony is "plainly inadmissible" under *Fed. R. Evid*. 403 because it includes conclusions of law, namely, "that the defendant's actions constitute an appropriate use of force, given the circumstances."

Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

There are two major requirements under Rule 702. The first is that a witness proffered to testify to specialized knowledge must be an expert. Courts "have interpreted this requirement liberally." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). "The second requirement of Rule 702 is that the expert must testify

to 'scientific, technical or other specialized knowledge [that] will assist the trier of fact.'" Id. at 742 (quoting Fed.R.Evid. 702.) "[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Id.; see Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588 (1993). Daubert explains that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation"; the expert must have "good grounds" for his or her belief. 509 U.S. at 590. In sum, Daubert holds that an inquiry into the reliability of scientific or specialized evidence under Rule 702 requires a determination as to its scientific validity. Id. at 590 n. 9.

In addition to reliability, Rule 702 requires that the expert's testimony must assist the trier of fact. "[A]dmissibility depends in part on 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742-43 (quoting United States v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985)). In other words, an expert must "apply his experience reliably to the facts; his opinions must be well-reasoned, grounded in his experience, and not speculative."

4

*Roberson v. City of Philadelphia*, Civ. A. No. 99-3574, 2001 WL 210294, at *4 (E.D.Pa. Mar. 1, 2001).

Here, the government's principal objection to Kapelsohn is not that he lacks expertise, but that his testimony would constitute an inadmissible legal conclusion. However, Fed. R. Evid. 704(a) expressly recognizes that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Moreover, the government's reliance on the District Court's opinion in *Smith v. New Jersey*, 2013 WL 3658786 (D.N.J. July 11, 2013), is misplaced. In that case, the District Court noted that the Federal Rules of Evidence do not permit the testimony of a police expert rendering an opinion about whether "particular conduct violated the relevant constitutional provisions." *Id*. at *1. *Smith* is distinguishable in two ways. First, *Smith* was a civil case in which the plaintiffs alleged claims pursuant to 42 U.S.C. § 1983 on the grounds of unlawful arrest, excessive force in making an arrest, and unlawful warrantless entry. *Id.,* at *1. In the present matter, defendant is criminally charged with deprivation of rights under color of law, in violation of 18 U.S.C. §§ 242. Thus, defendant possesses a constitutional right to present a complete defense, which Smith did not.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi*, [410 U.S. 284 (1973)], or in the Compulsory Process or Confrontation clauses of

the Sixth Amendment, *Washington v. Texas*, 388 U.S. 14, 23 (1967); *Davis v. Alaska*, 415 U.S. 308 (1974), the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *California v. Trombetta*, 467 U.S. 479, 485 (1984); *cf*. *Strickland v. Washington*, 466 U.S. 668, 684–685 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment."). Few rights are more fundamental than that of an accused to present witnesses in his or her own defense. *See*, *e.g.*, *Webb v. Texas*, 409 U.S. 95 (1972); *Washington v. Texas*, 388 U.S. 14, 19 (1967); *In re Oliver*, 333 U.S. 257 (1948).

The deprivation of rights under color of law statute requires the government to prove that the defendant: (1) was acting under color of law; (2) deprived the alleged victim of his right to be free from unreasonable search and seizure; (3) acted willfully in depriving the alleged victim of this right; and (4) caused bodily harm to alleged victim. *United States v. Lanier*, 520 U.S. 259, 264 (1997). Whether defendant employed unreasonable force under all the circumstances is the heart of the matter, and Kapelsohn's technical and specialized knowledge will be helpful to the jury in making that determination. As our Supreme Court has observed, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather

6

than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Such a judgment necessarily invokes expertise in law enforcement because

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.

*Id*. at 396-97. Simply put, defendant's ability to mount a full defense on these facts requires the use of expert testimony.

Second, unlike the narrow scope of Kapelsohn's proposed testimony, the plaintiff in *Smith* sought to introduce an expert who would opine on a wide variety of topics, including:

> the legal basis for police officers to enter homes; his conclusion that the police officers' entry into the Smith home was unreasonable; the legal basis for disorderly conduct arrests; his conclusion that there was no probable cause to support an arrest; the legal basis for police officers to use force; his conclusion that the force used was unreasonable; and his conclusion that Officer Rodriguez and the New Jersey State Police are vicariously liable for the officers' unreasonable actions.

*Smith*, at *2. The *Smith* court observed that the expert's report was "replete with legal conclusions and citations to cases and statutes." Id. at *4. The court then correctly determined that it must exclude "expert witness testimony on police practices when such 'testimony involve[s] only [the expert's] views concerning

7

the reasonableness of the officers' conduct in light of 'Fourth
Amendment standards' 'because this testimony '[i]s not a fact-
based opinion, but a statement of legal conclusion.'" Id. at *4
(quoting *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.
1995)).

Here, in contrast, Kapelsohn is prepared to offer a fact-
based opinion which relies on his review of all the circumstances
as memorialized in police reports and recorded on officers' body
cameras. His opinion will "embrace [the] ultimate issue" in the
case, as permitted by *Fed. R. Evid.* 704(a), but will also include
an explanation of the significant facts on which his conclusion is
based. *See Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 625 (E.D.
Pa. 2011) (Court ruled admissible "opinions about police training,
prevailing standards for use of force, and proper police procedures
(e.g., 'Police Officers are trained that they may use force only
when necessary and reasonable)").

Defendant Grier does not intend to elicit testimony from the
expert Kapelsohn with regard to either his legal analysis or his
legal conclusion on whether Grier acted reasonably or unreasonably
per 18 U.S.C. §242. Defendant does intend to elicit testimony from
Kapelsohn on those policies and procedures governing the use and
deployment of OC spray in the context of affecting an arrest. The
expert is not required to, nor will he opine, as to the ultimate
standard of constitutional reasonableness.  He will instead do as

8

he did pursuant to his report, namely review the actual conduct of defendant Grier in the context of those specific rules and regulations that he was required to follow as a Bridgeton Police officer pursuant to department Use of Force Policy (eff. 9/30/15) and the New Jersey Attorney General's Use of Force Policy (June, 2000 and subsequent revisions). In that regard, the issue is not whether Grier's conduct was constitutionally unreasonable, it is instead whether pursuant to generally accepted practices and procedures for law enforcement officers such as Greir, he followed the rules and practices mandated for all police officers.

As this District Court has previously stated, the testimony of an expert on police procedures and actions by way of a fact-based opinion about following rules and procedures pursuant to police science, should not be barred. "[T]he court can consider [the expert's] statement that [the officer's] use of the baton was contrary to generally accepted practices and procedures for law enforcement officers." *Fried v. Tetzlaff*, 2014 W.L. 1095735 *10 (D.N.J., March 19, 2014).  And in an Order filed on October 7, 2021, the Honorable Renee Marie Bumb, Chief U.S.D.J., denied the government's motion to exclude a defense expert in a similar Deprivation of Rights Under Color of Law case in *United States v. Wheaten*, Crim. No. 18-608 (RMB). Citing *Fried v. Tetzlaff*, Judge Bumb noted that: "Defendant correctly points out that this Court has previously determined that expert testimony regarding a police

officer's use of force as 'contrary to generally accepted practices and procedures for law enforcement officers' is proper evidence to be considered." (Exhibit A, p.1) This Court is urged to deny the government's motion in this case, also.

**B. The On-Scene Police Officers Must Not Be Permitted To Provide Their Expert Opinions In The Guise Of Lay Opinion.**

In its memorandum of law in support of its motion to permit the police officers to testify as to their lay opinions, the government specifically says that it "moves this Court for an order allowing the other BPD officers, who participated in the arrest of the Victim, to offer opinions about the Defendant's use of force and any resulting medical injuries sustained by the victim[2]." (Govt. memo 13-14) Defendant submits that even as it tries to preclude the defense expert from testifying, the government is attempting to present its own expert opinions in the guise of lay opinion. This Court is urged to stop those efforts by the government by denying this motion.

The pertinent rule of evidence on lay opinion, Rule 701, provides some general principles to help guide the analysis of this issue. That Rule "allows non-expert testimony in the form of an opinion or inference if that testimony is (1) rationally based on the witness's perception, (2) helpful to achieving a clear

---

[2] It should be noted that the victim was never provided with medical assistance. None of the officers from whom the government seeks to elicit opinion testimony regarding the victim's "injuries" saw fit to have the victim taken to the hospital or provided with access to any medical professional.

understanding of the testimony or the determination of a fact issue, and (3) **not based on scientific, technical, or other specialized knowledge.**" *United States v. Espino-Rangel*, 500 F.3d 398, 400 (5th Cir. 2007). (emphasis added) In the case at bar, the opinion testimony that the government seeks from the Bridgeton Police officers pertains to the "technical, or other specialized knowledge" that they have because they are police officers. It is their police expertise that the government hopes to benefit from in this case.

## **CONCLUSION**

For the reasons set forth above, Defendant John Grier, III, respectfully requests that the Court deny the government's motions to (A) exclude the defense expert; and (B) permit the other police officers to give their opinions as lay witnesses.


                              BIANCAMANO LAW, LLC
                              *Attorneys for Defendant John Grier, III*


Dated:                   BY:  /s/*Stacy Ann Biancamano*
                              Stacy Ann Biancamano,

Esq.

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | Crim No. 18-608 (RMB) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **ORDER** |
| STERLING WHEATEN, | : | |
| | : | |
| Defendant. | : | |
| | : | |

This matter comes before the Court on three motions:  (1) the Government's Motion in *Limine* [Docket No. 53]; (2) the Government's Motion in *Limine* Regarding Defense Opening Statement [Docket No. 74]; and (3) the Government's Motion to Exclude Defense Expert [Docket No. 95].  For the reasons set forth in this Order, as well as for reasons the Court will further provide on the record, if necessary, the Court rules as follows:  No. 53 is denied, in part, granted, in part, and reserved, in part; No. 74 is denied; and No. 95 is denied, without prejudice.

First, as to Nos. 74 and 95, Defendant correctly points out that this Court has previously determined that expert testimony regarding a police officer's use of force as "contrary to generally accepted practices and procedures for law enforcement officers" is proper evidence to be considered.  [Docket No. 97, at 12 (citing *Fried v. Tetzlaff*, No. 11-2578 (RMB/KMW), 2014 WL 1095735, at *10 (D.N.J. Mar. 19,

2014)).]  Such expert testimony, however, "becomes impermissible" once it
constitutes a <u>legal conclusion</u> that a police officer's "actions were unreasonable and
about what a reasonable officer would have done," as such conclusory statements in
the context of the use of force by the police are "practically interchangeable with
excessiveness." *Patrick v. Moorman*, 536 Fed. Appx. 255, 258 (3d Cir. 2013) (citations
omitted).  Thus, Defendant must carefully toe this line in introducing the testimony
of its expert witness, Dr. David Ferland.  Exercising caution, the Court will require
Defendant to "preview" its statements regarding the findings of Dr. Ferland in the
opening statement (Defendant may do so after the Government's opening
statement).  Defendant is permitted to elicit testimony from Dr. Ferland at trial,
again, provided it does not cross the line and become a legal conclusion.  The parties
are forewarned that the introduction of impermissible testimony could lead to a
mistrial.  *See U.S. v Malik*, 424 Fed. Appx. 122, 127 (3d Cir. 2011) (explaining the
factors considered on appeal in determining if "a mistrial is appropriate for
prejudicial witness testimony" in connection with the "aborted testimony" of an
expert witness) (citations omitted).  The Government's Motion in *Limine* Regarding
Defense Opening Statement [Docket No. 74] and Motion to Exclude Defense Expert
[Docket No. 95] are denied.

As to No. 53, the Court will grant the Government's Motion in *Limine*,
without prejudice, with respect to testimony regarding David Castellani's conduct
before Defendant arrived at the scene of Mr. Castellani's arrest.  The Court notes,
however, that such evidence is not inadmissible *per se*, and may be permitted at a

2

later stage if the defense demonstrates to the Court how such evidence goes to the knowledge of Defendant or to discredit the testimony of a witness who testifies at trial.

As to No. 53, the Court will grant the Government's Motion in *Limine* with respect to Defendant's ability to introduce his own out-of-court statements made before the grand jury and during his FBI interview.  Such statements are generally not permitted by the defense.  However, the Court acknowledges Defendant's argument that such evidence may be permissible under the rule of completeness.  The Court will rule on any such argument as it is made by Defendant in time.

As to No. 53, the Court denies the Government's Motion in *Limine* with respect to the testimony of Charlie Meshloh, Ph.D.  The Court is not persuaded that Dr. Meshloh's finding that Defendant's conduct "does not rise to the level of a criminal act and perhaps not even to the level of a civil action" constitutes a legal conclusion as alleged by the Government.  [Docket No. 53, at 14.]  Such statement only offers Dr. Meshloh's opinion of what Defendant's conduct is not and stops short of reaching a legal conclusion.  Again, context matters.  *See U.S. v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001) (explaining that "[i]t is only as to the last step in the inferential process that [the Federal Rules of Evidence] comman[d] the expert to be silent").  Thus, at trial, the Court will not permit any expert witness to testify as to Defendant's ultimate guilt or innocence of the crimes with which he has been charged.  For instance, Meshloh could not testify that Defendant is not guilty of violating the law.  [Docket No. 53-3, at Exhibit G.]  However, as previously

3

discussed, testimony with respect to whether Defendant was acting in accordance with established practices and procedures for police officers is not only permissible, but also important evidence for the jury to consider.  Dr. Meshloh's written findings, on their face, appear to concern the latter category.

As to No. 53, the Court reserves on the Government's Motion in *Limine* with respect to improper character evidence.

As to No. 53, the Court grants the Government's Motion in *Limine* with respect to references to punishment or adverse collateral consequences of conviction.

As to No. 53, the Court reserves on the Government's Motion in *Limine* with respect to treating potentially hostile witnesses as such.

As to No. 53, the Court previously ruled on the Governments Motion in *Limine* with respect to directing law enforcement officers who attend trial not to wear uniforms or other indica of their employment, which is denied.

For the reasons set forth above;

**IT IS** on this **7th** day of **October 2021** hereby

**ORDERED** that (1) the Government's Motion in *Limine* [Docket No. 53], is **denied**, in part, **granted**, in part, and **reserved**, in part; (2) the Government's Motion in *Limine* Regarding Defense Opening Statement [Docket No. 74] is **denied**; and (3) the Government's Motion to Exclude Defense Expert [Docket No. 95] is **denied**.

October 7, 2021                    s/ Renée Marie Bumb
Date                               Renée Marie Bumb
                                   United States District Judge

4