UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

    Plaintiff

v.

JOHN GRIER III,

    Defendant

Criminal No. 21-524 (JHR)

**BRIEF OF DEFENDANT JOHN GRIER, III, IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE THE SUBMISSION OF THE INDICTMENT TO THE JURY, OR, IN THE ALTERNATIVE, TO HAVE THE INDICTMENT REDACTED.**

The defendant, John Grier, III, moves to preclude the indictment against him from being submitted to the jury during its deliberations. In the alternative, the extraneous, one-sided narrative contained in the indictment must be excised before it is given to the jury.

**BACKGROUND**

In the above-captioned case, the Grand Jury in and for the District of New Jersey indicted John Grier, III, for the crimes of Deprivation of Rights Under Color of Law, in contravention of 18 U.S.C. § 242 (count 1); and Falsification of Records in a Federal Investigation, in contravention of 18 U.S.C. § 1519 (count 2). Although Mr. Grier faces only two charges, the indictment against him is six-pages long. It is littered with superfluous language solely meant to sway the reader toward the side of the government. Before the indictment even mentions Count 1, it contains a lengthy, one-sided narrative in subsections titled "Background" (four paragraphs) and "The Offense" (14 paragraphs). And before the indictment mentions Count 2, it incorporates the 14 paragraphs contained in the section titled "The Offense" that precedes the previous charge, and it adds three more paragraphs of conclusive narrative about John Grier's alleged guilt. Presentation of this document to the jury during its deliberations would emphatically deprive defendant of his Constitutional right to a fair trial under the Sixth Amendment.

**LEGAL ARGUMENT**

**POINT I**

**THE INDICTMENT IS NOT EVIDENCE AND IT SHOULD NOT BE SUBMITTED TO THE JURY DURING ITS DELIBERATIONS; IN THE ALTERNATIVE, THE INDICTMENT MUST BE REDACTED BY REMOVING THE EXTRANEOUS, ONE-SIDED NARRATIVE CONTAINED THEREIN.**

**A. The Indictment Should Not Be Submitted To The Jury.**

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." For many offenses, the indictment can merely track the elements of the offense. In more complex cases, "it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, -- it must descend to particulars." *United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 558 (1876) (quotation omitted); *see*, *e.g.*, *Russell v. United States*, 369 U.S. 749, 765 (1962). Even in the most complicated cases, however, there is no requirement that an indictment contain a detailed recitation of the government's case. Instead, to the extent an indictment sufficient under Rule 7(c)(1) and the Fifth and Sixth Amendments does not adequately inform the defendant of the charges he or she faces or allow him or her to assert the protections of the Double Jeopardy Clause, the court can order the government to provide a

3

bill of particulars under Rule 7(f). *See*, *e.g.*, *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971).

Over the past two decades, however, the government has found a use for indictments beyond merely informing the defendant of the charges and permitting him or her to assert the protections of double jeopardy. The government now routinely uses "speaking" indictments to serve as an advocacy tool in the jury room. Courts permit this practice based on the assumption that the prejudice from a speaking indictment can be cured by instructing the jury that the indictment is not evidence. *See*, *e.g.*, *Third Circuit Model Criminal Jury Instructions*, Instruction 3.07 (2017) ("An indictment is not evidence of anything, and you should not give any weight to the fact that [the defendant] has been indicted in making your decision in this case."). But the efficacy of such instructions is doubtful. No one would think that an instruction of this kind would cure the prejudice to the prosecution if, for example, a transcript of the defense closing argument were placed in the jury room during deliberations. There is no more reason to think that it cures the prejudice to the defense from placing a speaking indictment in the jury room.

Rule 7(d) of the Federal Rules of Criminal Procedure permits the defense to move to strike surplusage from the indictment. On its face, this rule might seem a useful tool to mitigate the prejudice from a speaking indictment. In practice, however, Rule

4

7(d) provides scant protection. Allegations may be stricken from the indictment only if they are "both irrelevant (or immaterial) and prejudicial." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006) (emphasis added). Under this standard, a district court might refuse to strike even the most inflammatory and prejudicial allegations, as long as they meet the broad relevancy standard.

A speaking indictment in the jury room thus presents a significant risk of misuse. The means available to prevent that misuse -- jury instructions and motions to strike under Rule 7(d) -- are likely inadequate in most cases. No compelling need warrants incurring this risk. *See, e.g., United States v. Roy*, 473 F.3d 1232, 1237 n.2 (D.C. Cir. 2007) (the practice of submitting the indictment to the jury "often carries significant risks and has few corresponding benefits"). The district court can convey the nature of the charges to the jury through jury instructions. *See, e.g., United States v. Esso*, 684 F.3d 347, 351 n.5 (2d Cir. 2012) ("In most cases, the judge's instructions regarding the issues to be addressed by the jury and the elements of the offenses charged, which may include a reading of the legally effective portions of the indictment, will more than suffice to apprise the jury of the charges before them."). Submitting the government's detailed statement of its version of the case, devoid of exculpatory evidence or any defense perspective, serves no purpose, is unfair

5

to the defendant, and constitutes an abuse of the court's discretion.

> **B. If This Court Decides That The Indictment Should Be Given To The Jury During Its Deliberations, All Of The Language Outside Of The Actual Charges Must Be Redacted.**

In this case, the indictment's narrative of the Government's case draws a straight line to a guilty verdict. It avoids any mention of the defense theory or any extenuating circumstances. It provides the government an opportunity to present its case unburdened by the rights of a defendant in a criminal case. The government's narrative in the indictment is unchallenged by inconvenient roadblocks that might be presented via legal representation, the cross-examination of witnesses, etc. Defendant has argued in § A, *infra*, that there is no legitimate reason for the indictment to be provided to the jury during its deliberations. However, should this Court disagree with that position, it is urged to at least purge the indictment of its superfluous, highly prejudicial language.

The Third Circuit in *United States v. Todaro*, 448 F.2d 64, 66 (3d Cir. 1971), held that the decision to allow "jurors to have a copy of the indictment with them during their deliberations ... is a matter within the discretion of the District Judge, subject to a limiting instruction that the indictment does not constitute evidence, but is an accusation only." Later, in *United States v. Pungitore*, 910 F.2d 1084, 1142 n.83 (3d Cir. 1990), the Third

Circuit recognized that the District Court has the power to redact the indictment if doing so would be appropriate to avoid prejudice to the defendant. *Accord United States v. Roy*, 473 F.3d 1232, 1237 n.2 (D.C. Cir. 2007) (stating that trial court may redact an indictment before submitting it to the jury).

In *United States v. Fattah*, 902 F.3d 197, 258 (3d. Cir. 2018), several defendants "objected to the District Court's decision to give the jury a redacted copy of the indictment to use during its deliberations." The defendants argued "that the indictment's narrative of the Government's case set out a roadmap that omitted any averments relating to the defense theory and allowed the Government to yet again present its case. To buttress that argument, [defendants] Nicholas and Brand cite the testimony of Juror 12, who described the jury's initial deliberations and alleged that the jurors viewed the indictment as evidence." *Id*. at 258-59. In denying relief to the defendants, the *Fattah* court cited the decisions in *Todaro* and *Pungitore*, condoning the practice of redacting a speaking indictment like the one at issue in the matter at bar. 902 F.3d at 259. Concluding that sending the indictment to the jury was not an abuse of the trial judge's discretion, the appellate court noted that: "While both Nicholas and Brand objected in general terms to the District Court's decision to provide the indictment to the jury, they have not directed us to any specific request to redact the information they

7

now claim is prejudicial. And the District Court provided a limiting instruction on four occasions during its charge, repeatedly emphasizing that the indictment was not evidence." *Id*.

   Defendant Grier is herein specifically requesting that all of the prejudicial information be redacted from the indictment. He submits that all of the extraneous, one-sided narrative contained in the indictment must be redacted before that indictment is given to the jury.  Only then could he possibly receive a fair trial.

## **CONCLUSION**

For the reasons set forth above, Defendant John Grier, III, respectfully requests that the Court preclude the submission of the indictment to the jury. In the alternative, the government's narrative contained in the indictment must be removed before the indictment is provided to the jury.

```
                            BIANCAMANO LAW, LLC
                            Attorneys for Defendant John Grier, III


Dated:                 BY:  /s/ Stacy Ann Biancamano
                            Stacy Ann Biancamano, Esq.
```