## Legal Arguments

### POINT I
### EVIDENCE OF OFFICER GRIER'S CHARACTER FOR TRUTHFULNESS IS ADMISSIBLE UNDER FEDERAL RULES OF EVIDENCE 404(a)(2)(A) AND 405(b)

Officer Grier is alleged to have falsified his report. His truthfulness is directly implicated by Count II of the indictment charging a violation of 18 U.S.C. § 1519, falsification of records in a federal investigation. Evidence of his honesty by reputation and opinion is clearly admissible at trial pursuant to Fed. R. Evid. 405(b)[1]. However, introduction of such character evidence does not permit the Government on cross-examination to delve into specific instances of Officer Grier's alleged use of excessive force as regarding this alleged incident or other unrelated incidents.

Prior alleged specific instances of excessive force are not pertinent to Officer Grier's good character for truthfulness and honesty. Direct examination of reputation and opinion testimony of Officer Grier's veracity does not open the door to Officer Grier supposedly using excessive force on this or prior occasions. "Relevant specific instances of conduct are only instances going to the accuracy of the character witness's testimony." *United States v. Curtis*, 664 F.2d 263, 268 (3d Cir. 1981).

---

[1] Rule 405 provides, in pertinent part, as follows:
"(b) By Specific Instances of Conduct. When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct."

Officer Grier is permitted to limit his character witnesses to only testifying about his character trait of truthfulness. See *Curtis* at 268 ("an accused may advance more than one character trait as evidence, so long as each of those traits are germane to some issues in the trial"). Consequently, the United States is prohibited from crossing any of Officer Grier's character witnesses about their knowledge regarding this incident or any prior use of force. See *Id; see also United States v. Lechoco*, 542 F.2d 84, 87-88 (D.C. Cir. 1976) ("Obviously cross examination must be confined to matters bearing on the particular character trait to which the witness testified. Impeachment of a witness who testified as to reputation for non-violence, for instance, should not open the door to cross examination about specific instances of lying").

In summary, Officer Grier's character for truthfulness is a pertinent trait under Federal Rule of Evidence 404(a)(2)(A), and specific instances demonstrating this trait are essential to his defense under Rule 405(b). Therefore, the defense respectfully requests that the court permit the introduction of this character evidence at trial.

### POINT II
### THE GOVERNMENT'S MOTION TO TREAT CERTAIN PROSECUTION WITNESS AS HOSTILE IS PREMATURE AND SHOULD BE DENIED

The Government can seek no automatic permission to treat any witness they call as hostile where they simply anticipate potential hostility from the witness. The court can only evaluate the issue upon receipt of testimony at trial. It is important to note, however, every police witness referred to by the Government has voluntarily

cooperated and provided interviews and testimonies. None of them appear to be, on their faces, hostile.

In view of the foregoing, it is respectfully submitted that the Court should reserve judgment and only allow the designation of hostile witness when needed.

# POINT III
## THE GOVERNMENT'S MOTION SEEKING TO PRECLUDE ANY REFERENCE TO POSSIBLE PUNISHMENT OR COLLATERAL CONSEQUENCES SHOULD BE DENIED

The government argues that the defense should be precluded from referring to either the penalty, possible sentence, sentencing range, or possible collateral consequences that Officer Grier may face if convicted. Allowing reference to potential punishment and collateral consequences is a natural extension of the increasing role of the jury regarding facts that trigger mandatory minimum sentences in the federal criminal system as recognized by *Apprendi v. United States*, 430 U.S. 466, 490 (2000) (holding that juries must find all facts other than the existence of a prior conviction which increase the defendant's punishment beyond the statutory minimum), and its progeny. It is respectfully submitted that the Government's Motion to preclude references to possible punishment or collateral consequences should be denied.

# POINT IV

## THE GOVERNMENT'S MOTION TO PREVENT LAW ENFORCEMENT OFFICERS ATTENDING TRIAL FROM WEARING UNIFORMS OR OTHER RECOGNIZABLE ITEMS SHOULD BE DENIED BUT ENFORCEMENT OFFICERS TESTIFYING AT TRIAL SHOULD BE PRECLUDED FROM WEARING UNIFORMS OR OTHER RECOGNIZABLE ITEMS

The Government seeks to prevent any law enforcement officer attending the trial from wearing their uniforms or other recognizable items in the courtroom. In support of its Motion, the Government relies on the Supreme Court case of *Holbrook v. Flynn*, 475 U.S. 560, 570-71 (1986), quoting it's brief the following, "we do not minimize the threat that a roomful of uniform and armed policemen might pose to [...] chances of receiving a fair trial." *Id.* Notably, the government omits what the defense views as key language from the quotation. The Court's actual statement was "we do not minimize the threat that a roomful of uniform and armed policemen might pose to *a defendant's* chances of receiving a fair trial." (emphasis added). Despite the Government's reliance on the case, the Court in *Holbrook* actually held that four uniformed State Troopers sitting in the front row of the gallery in the courtroom to supplement customary security did not prejudice the jury, particularly in light of appropriate *voir dire* responses during jury selection indicating that the presence of uniformed troopers would not affect the defendants' ability to receive a fair trial. Like the Court in *Holbrook*, the Court in *Woods v. Dugger*, 923 F.2d 1454 (11th Cir. 1991) was not concerned with prejudice to the government, but rather with prejudice against the defendant. The Court in *Woods* stated: "We hold that the record demonstrates that

4

the pretrial publicity combined with the large number of uniformed spectators rose to the level of inherent prejudice, thereby depriving the petitioner [defendant Woods] of a fair trial." *Woods*, 923 F.2d at 1460.

Obviously, neither Officer Grier nor defense counsel have any control over who attends a public trial of this nature, or what they wear. Still the Government's request highlights greater concerns for the defense. The Government's case will undoubtedly rely heavily on the testimony of law enforcement officers. That being the case, the defense's concern is not with the attire of spectators in the gallery, but with that of law enforcement officers testifying as prosecution witnesses.

In view of the foregoing, Defendant Officer John Grier III respectfully requests by way of cross-motion that the Court prohibit law enforcement officers from testifying in uniform, or from returning to the courtroom at any time during the trial, including to attend closing arguments, wearing any item (uniform, badge, or otherwise) that would identify them as law enforcement personnel to the average jury member.

### POINT V & VI
### NO OBJECTION AS TO RECIPROCAL DISCOVERY AND THE JENCKS ACT DISCLOSURE REQUIREMENT, BUT THE COURT SHOULD RECIPROCALLY ORDER THE GOVERNMENT TO ALSO PRODUCE ALL MATERIAL PRIOR TO VOIR DIRE.

The Defense has no objection to the Government's requests for reciprocal discovery under Federal Rule of Criminal Procedure 16(b) and the production of

defense witnesses' statements under Rule 26.2. These provisions promote a fair trial by ensuring that both parties have the information they need to present their cases effectively. This case has been the subject of numerous scheduling orders, and it takes both parties considerable time to review and provide discovery.

However, to promote a fair and equitable process, the Court should reciprocally order the Government to provide all relevant material to the Defense in a timely manner. The Defense should have sufficient opportunity to review all such materials prior to jury selection. This would ensure that the Defense can adequately prepare for trial, including jury selection, opening statements, examination of witnesses, and closing arguments. The timely disclosure of all materials is not only in line with the principles of reciprocal discovery, but it also serves the broader interest of justice by promoting a balanced and fair adversarial process.

Respectfully submitted,
/s/ *Stacy Biancamano*
Stacy Biancamano
