UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES | : |
| v. | :  Crim. No. 21-cr-524 (JHR) |
| JOHN GRIER III | : |

### UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL EXPERT DISCOVERY

The United States of America, by Philip R. Sellinger, United States Attorney (Lindsey R. Harteis, and Jason M. Richardson, Assistant United States Attorneys, appearing) respectfully submits this brief in support of its motion to compel the disclosure by the defense of certain expert witness materials by its noticed expert, Emanuel Kapelsohn, as required by Federal Rule of Criminal Procedure 16.

**The Government's Motion to Compel**

On September 15, 2023, the Government moved to compel disclosure of an itemized list of materials that the Government has been requesting of defense counsel on an ongoing basis since April 3, 2023. The following materials were requested:

1. Any documentation, including reports, personnel records, or police reports concerning the two occasions during which Kapelsohn professed to use OC spray "on the street" as referred to in his report;
2. Information concerning Kapelsohn's fees and total compensation for his work in this case;
3. Kapelsohn's rates for consulting or other paid engagements performed for OC manufacturers, a summary of consulting work performed, and invoices associated with any paid work performed for OC manufacturers, as well as written work product provided to OC manufacturers for pay.
4. Kapelsohn's updated four-year case list;
5. Any video footage showing Kapelsohn being sprayed by OC spray, or video footage of the deployment of OC spray which he relies on in his report;
6. FBI statistical data referred to in his report;
7. Uncited federal caselaw referred to on page 25 of his report;

8. Interview notes, memos, emails, recordings, or records of any interviews, conversations, or communications with anyone consulted which was used to form the basis of the expert opinions or factual statements contained in the expert report;
9. All raw data, statistics, scientific articles, or other notes of any kind relied on to form the basis of the expert opinions or to make factual statements contained in the report;
10. A list of any individuals that Kapelsohn consulted to form the basis of the opinions or factual statements in the expert report and any notes or communications with such persons; and
11. Written, video, powerpoint, notes, speaking points, or other content of the trainings on OC spray use that Kapelsohn purported to have given in his report.

To date, the defendant has failed to disclose any of the above-requested materials concerning Kapelsohn, and he also has thus also failed to meet Rule 16's requirement that Kapelsohn sign and certify his expert disclosures in response to these requests. With only 17 days left before jury selection, the Government remains in need of the requested (and required) materials and signatures, and therefore submits this reply brief in support of its motion to compel.

**The Defendant's Expert Discovery Obligations**

The mutual obligation of a defendant to provide pretrial discovery concerning expert testimony was created by a 1993 Amendment to Rule 16 that expanded federal criminal discovery obligations. The Advisory Committee explained that the intent of the amendment was "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross-examination." Fed.R.Crim.P. 16, Advisory Committee Notes, 1993 Am.[1] The Advisory Committee further explained

---

[1] Fed. R. Crim. P. 16(b)(C)(iii) requires the defendant to provide a summary of the bases and reasons for the expert's conclusions, which would necessarily include an explanation of the expert's methodology and analysis used to arrive at his conclusion. *See United States v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002) (affirming district court's exclusion of expert witness testimony because Rule 16 disclosure "did not describe [the expert's] opinions beyond stating the conclusion he had reached and did not give the reasons for those opinions"); *Ulbricht*, 2015 U.S. Dist. LEXIS 11936, at *14 (rejecting disclosure that contained "no bases for opinions, no analysis, no methodology.").

that the requirement to provide a summary of the expected expert testimony was intended "to permit more complete pretrial preparation by the requesting party." According to the Advisory Committee, the most important aspect of this mutual discovery obligation is the provision of a summary of the bases of the expert's opinion. *Id.*[2] Therefore, the summary required pursuant to Rule 16(a)(1)(G) and Rule 16(b)(1)(C) should cover "not only written and oral reports, tests, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." *Id*.

In December 2022, Rule 16 of Federal Criminal Procedure was again amended to require parties to make more substantial disclosures concerning expert witnesses. The disclosure for each proffered expert witness must now contain:

   a. a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed;
   b. the bases and reasons for them;
   c. the witness's qualifications, including a list of all publications authored in the previous 10 years;
   d. and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Additionally, the required disclosure must now be approved and signed by the expert witness himself (unless it is explicitly stated in the disclosure why it is not possible to obtain the witness's signature

---

[2] The right of the Government to reciprocal discovery is firmly established in Rule 16(b)(1) of the Federal Rules of Criminal Procedure." *United States v. Miller*, No. 15-202, 2016 WL 1408102, at *5 (D.N.J. Apr. 11, 2016); "Rule 16(b)(1)(A) provides that where the Government complies with a defendant's request for disclosure under Rule 16(a) (1)(E), defendant must then similarly allow the Government, on request, to inspect documents and objects in defendant's possession which defendant intends to use in its case-in-chief at trial. Fed.R.Crim.P. 16(b)(1)(A). Rules 16(b)(1)(B) and (C) impose similar conditions and requirements regarding reciprocal discovery of scientific tests and expert testimony, respectively." *United States v. Karriem*, No. CRIM. 07-706 (HAA), 2008 WL 5118200, at *14 (D.N.J. Dec. 4, 2008).

through reasonable efforts, or the party already has provided a report, signed by the witness, containing all the opinions and the bases and reasons for them).

Even before Congress set forth these heightened disclosure requirements, several courts already had read the "written summary" requirement of Rule 16 broadly, particularly when it comes to the description of the bases and reasons for the expert's opinion. *See United States v. Sourlis*, 953 F. Supp. 568, 581 (D.N.J. 1996) (ordering that defendants produce additional information regarding defendant's polygraph expert's proposed testimony in accordance with defendants' discovery obligations under Rule 16); *United States v. Sturman*, No. 96 Cr. 318, 1998 WL 126066 (S.D.N.Y. Mar. 20, 1998) (holding that a general description of the possible bases for the defendant's expert opinion was insufficient to meet the requirements of Rule 16 and ordering that defendant produce a written description of additional information regarding the bases of defendant's expert opinion).[3]  Thus, in circumstances where the

---

[3] It is clear that, should the defendant continue to evade the requirements of Rule 16, this Court has various remedies at its disposal. Failure to provide discovery mandated under Rule 16 may result in a waiver of the defendant's right to introduce such evidence at trial. *See* Rule 16(d)(2)(C); *United States v. Libutti*, No. 92 Cr. 611, 1994 WL 7764646, *1 (D.N.J. Feb. 8, 1994) (in light of defendant's failure to make a sufficient proffer consistent with Rule 16(b)(1)(C) at the initial hearing on the matter, i.e. failing to provide a C.V. of proposed experts accompanied by a written summary of proposed expert testimony and bases therefore, the defense was precluding from mentioning the compulsive gambling theory and the proposed expert testimony in the opening statement); *United States v. Goguen*, 723 F. 2d 1012 (1st Cir. 1983) (holding that trial court did not err in perjury prosecution when court excluded expert testimony concerning defendant's poor memory and low intelligence, where defendant did not disclose the evidence until the third day of trial and did not give the requisite notice. *See also* Fed. R. Crim. P. 16(d)(2)(D) (allowing the court to fashion any just remedy for a party's failure to make Rule 16 expert disclosures).

Defendant's failure to produce documents relied upon to the government, which Kapelsohn might refer to in the defense case-in-chief, may result in the exclusion of the evidence at trial. *See United States v. Weiss*, 930 F. 2d 185, 199 (2d Cir. 1991) (finding that district court's exclusion of defendant's evidence which was not produced to the prosecution in advance of trial, despite earlier government requests for the documents, was not an abuse of discretion since permitting the defense's use of the documents without the prosecution ever having seen them would have given the defense an unfair advantage). "[F]ailure to provide the required level of detail as to the expert's opinions and the bases, reasons, and sources of those opinions can [ ] lead to preclusion." *United States v. Ulbricht*, No. 14-cr-68, 2015 WL 13694310, 2015 U.S. Dist. LEXIS 11936, at *14 (S.D.N.Y. Feb. 1, 2015) (finding Rule 16 disclosures insufficient and

defense expert is relying on a personal experience, interview, studies, data, or literature as a basis for either a factual statement in his or her report, or as a basis for an opinion, Rule 16 plainly requires a disclosure that is adequate enough to inform the opposing party of the basis for that factual statement or opinion. *See Unites States v. Jasper*, 2003 WL 223212 at *3-6 (discussing the Advisory Committee notes concerning the 1993 Amendments to Rule 16 in the context of reciprocal discovery and ordering the defendant to turn over documents pertaining to his expert witness that would be relied upon in the defendant's case-in-chief).

### Items requested by the Government that Defendant does not dispute are subject to disclosure.

In his response to the Government's motion, the defendant concedes that items 1 (documentation and records pertaining to Kapelsohn's personal use of OC spray "on the street" two times), 4 (Kapelsohn's four-year case list), 5 (video footage of Kapelsohn either deploying OC spray on others or having it deployed on him, as referenced in his report), and 11 (training materials on OC products that Kapelsohn has used or developed) are subject to disclosure. Nonetheless, as of the date of this filing, none of these items have been provided to the Government. Therefore, the Government is still seeking this Court to

---

stating that "while the defense's response contains additional high-level description of the testimony, and the Court might be able to guess as to various opinions, it contains no real opinions, no bases for opinions, no analysis, no methodology."); *see also United States v. Mavashev*, 2010 WL 234773, 2010 U.S. Dist. LEXIS 2812 (E.D.N.Y. Jan. 14, 2010) (stating that an expert's testimony "may be excluded if the party has made no attempt at all to describe the bases and reasons for those opinions" in its disclosure) (citation and internal quotation marks omitted). It is insufficient for a Rule 16 disclosure to merely provide the expert's conclusion, as the bases for the expert's conclusion must also be provided so they may be tested. *United States v. Northington*, No. 07-550-05, 2012 WL 2873632, 2012 U.S. Dist. LEXIS 97481, at *24-26 (E.D. Pa. July 12, 2012) ("Meaningful rebuttal means being permitted to test not only the conclusions of Defendant's expert, but also the testing procedures used to reach those conclusions."); *United States v. Tuzman*, 2017 WL 6527261, at *11, 2017 U.S. Dist. LEXIS 208410, at *32 (S.D.N.Y. Dec. 18, 2017) ("It was not sufficient to disclose [the expert witness'] baseline conclusions ...; rather, [Defendant] needed to disclose the formulas or calculations that [the expert] used to reach his conclusions."); *United States v. Bryan*, No. CR 2022-0009, 2023 WL 5286999, at *1 (D.V.I. Aug. 16, 2023).

compel disclosure of these items or, if the items do not exist, a certification by Kapelsohn stating that his prior disclosures already are complete.

### Disclosures concerning Kapelsohn's Financial Interest in this Case

Item 2 of the Government's requested disclosures calls for disclosure of "Kapelsohn's hourly rates for the various tasks performed on this case, including his hourly rate for drafting the report, research, trial preparation and court testimony, copies of all invoices up to the date of trial for work performed on this case, and the disclosure of the total amount Kapelsohn has billed the defense for as of the start of trial." Govt. Letter Seeking Expert Disco, 4/3/23.

The requested information is plainly required by Rule 16.[4]  In addition to the Advisory Committee Notes, discussed *supra*, which make it clear that Rule 16 calls for the disclosure of any items that will aid in effective cross-examination, other District Courts, including in this district, have explicitly ordered that information on expert compensation be disclosed pursuant to Rule 16.  *See, e.g., United States v. Sourlis*, 953 F. Supp. at 580-81 (District Court ordering disclosure of "a succinct written summary of the Mr. Arther's polygraph testimony; the charts made during the examination; information regarding the methodology; information regarding whether an activity monitor was employed; a list of the control questions and directed lie questions asked; **the amount of money paid to Mr. Arther for his services**; information regarding what happened during the pre-test interview and the post-test interview; and any additional information that would put the government "at the scene as the scene unfolded," pursuant to Rule 16) (emphasis added)).

---

[4]  Without citing any authority, the defendant claims that Rule 16 does not compel disclosure of an expert witness's hourly rates or total billed amount.  Def. Response Letter, p. 2.

Here, the information pertaining to Kapelsohn's compensation is not only subject to disclosure under the plain language and application of Rule 16, but it is also relevant to the Government's cross-examination of him to expose his bias and financial interest in the outcome of this case. Therefore, the Government maintains its request that this Court compel its disclosure.

### Disclosures pertaining to Kapelsohn's consulting for OC manufacturers

Item 3 in the Government's request for expert disclosures seeks "Kapelsohn's rates for consulting or other paid engagements performed for OC manufacturers, a summary of consulting work performed, and invoices associated with any paid work performed for OC manufacturers, as well as written work product provided to OC manufacturers for pay." Govt. Letter Seeking Expert Disco, 4/3/23. Defendant responded to this request by stating, "[t]here is nothing in F.R.Cr.P. 16 which requires disclosure of this information. Kapelsohn's work and rumination with respect to other cases is irrelevant[,]" and asked for additional authority on why it is subject to disclosure. Def. Response Letter, p. 2.

Contrary to the defendant's assertions that Kapelsohn's experience and compensation as a consultant for OC companies would be "irrelevant," Kapelsohn clearly thought that this experience was relevant to his qualifications and that it served as a basis for his opinions offered in this case. He emphasized it in his report:

> I have had working relationships with several leading manufacturers of OC products, and several of those manufacturers provide samples or prototypes of their products to me for my test, evaluation, and comment…
>
> My extensive experience with the full range of OC products, their use in law enforcement and security, and their effects, allows me to offer opinions that may assist the jury regarding OC spray and its use in this case.

Kapelsohn Report, 8/18/22 at 10.

But, merely disclosing that he has "had working relationships" with OC manufacturers in his report does not provide the Government with a sufficient basis to determine whether his consulting experience, when viewed in the totality of his other proffered qualifications, is sufficient to qualify him as an expert. Kapelsohn has professed to have unique "relationships" with OC companies, which supposedly bolster his qualifications as an expert witness and impact his opinions– without adequately disclosing how these "relationships" provide a basis for him to be qualified. Indeed, such undisclosed "relationships" may suggest bias and provide fair material for cross-examination, depending on their nature. In order for the Government to appropriately and efficiently voir dire Kapelsohn on his expertise, information about the nature of his consulting work, the actual OC products with which he is familiar, and the time frame of his projects, would be relevant and helpful to the Government. To allow him to allege he is qualified on the basis of his past consulting work – when he has not even made clear whether he consulted on OC spray for the manufacturer at issue in this case – allows him to tout "qualifications" that may be overstated, irrelevant to the issues in this case, or potentially, suggestive of bias and worthy of exploration through cross-examination.

Likewise, Kapelsohn's report gives absolutely no indication of what those "working relationships" consisted of. He could have been consulting on a variety of issues, such as sales and marketing, efficacy of gel OC and other products not at issue in this case, or on research, development or legal matters that would not qualify him as an expert in the use of force pertaining to OC spray. In the event that Kapelsohn actually has prior consulting experience that bolsters his proffered expertise in this case, having such information disclosed prior to trial would allow the Government to possibly save time and not voir dire on such topics. In the event that the disclosures would aid the Government in either voir dire or cross-examination, this is precisely the sort of disclosure that Rule 16 is designed to effectuate. Likewise,

Kapelsohn purported to rely on this experience in crafting his opinions, rendering it subject to Rule 16 disclosure.

In addition to information about the substance of his consulting work, the Government seeks disclosure of information about Kapelsohn's financial ties to OC manufacturers. This information is highly relevant to cross-examination, because Kapelsohn offers information that is favorable to OC manufacturers in his report, and Rule 16 is designed to facilitate disclosure of information that would assist the Government in cross-examination. To the extent that Kapelsohn has made income from OC manufacturers in the past, or has any ongoing consulting relationships with them, cross-examination could reveal that those financial ties may be likely to influence Kapelsohn to testify that OC products are safe and do not cause significant pain or injury.

The Government maintains its request for the disclosures concerning Kapelsohn's consulting work for OC manufacturers and reserves the right to seek the appropriate remedy if the defendant does not comply with this request.

**FBI Data Referenced in the Expert Report**

On page 22 of his report, Kapelsohn states that "FBI data for 2020 (and for all years that I know of) show more murders in the United States were committed with "personal weapons" (hands, fists, feet, etc.) than with rifles of all sorts, including so-called "assault rifles" and all other rifles combined." The Government seeks disclosure of the uncited FBI data from "all other years" that Kapelsohn refers to, but fails to cite in his report.

The defendant responded that already he has provided this information, Def. Response Letter, p. 2-3, but the citation he provided only contains one report, which pertains to 2020. Because Kapelsohn purports to rely on statistical data from "all years that [he] know[s] of," the Government is requesting either a complete citation to or a list of the actual data to which he is referring. Plainly, Rule 16 mandates

the disclosure of all statistical data that is being relied upon in a report. Therefore, this Court is within its discretion to compel its disclosure or to bar Kapelsohn from referring to any data for which he cannot provide a citation to the Government.

### Uncited Caselaw Referred to in the Expert Report

In addition to failing to adequately cite data and studies that he relies on as a basis for his opinions, Kapelsohn – an attorney – likewise makes reference to uncited legal authority that he has relied upon, without disclosing to the Government what that authority is. For example, on page 25 of his report, Kapelsohn states that "[f]ederal courts have recognized the relatively low level of force presented by OC spray," but then he cites just one decision by the 11th Circuit Court of Appeals as a basis for this information.

Plainly, Kapelsohn professes to be relying on authority from multiple courts (not just a single panel from the 11th Circuit Court of Appeals) as a basis for his assertion that "federal courts" have made findings that OC spray is relatively low-level force. Under Rule 16, therefore, he must disclose what other caselaw he is referring to so that that Government has an opportunity to review, and if necessary, ask him questions on cross-examination about that authority. To the extent that Kapelsohn, *qua* defendant, refuses to comply with this request, the Government reserves the ability to seek appropriate remedies prior to or during trial

### Interview notes, memos, recordings, records of interviews, or communications from any conversations used to form the basis for expert opinions or factual statements contained in the expert report

The Government seeks disclosure of any written records, recordings, written communications, emails, or notes from any conversations that Kapelsohn may have had and which were relied upon to form the basis of expert opinions or factual statements rendered in his report.

Clearly acknowledging that such conversations and/or interviews took place, and that such materials exist, the defendant responds that such information is "work product" because Kapelsohn is

defendant's "agent." Def. Response Letter, ¶ 8. Defendant also responds that he does not agree that Rule 16 mandates disclosure of such information, and that "the report itself provides ample information regarding the bases of Kapelsohn's conclusions."

Defendant's reliance on the work product doctrine to shield Kapelsohn from Rule 16's disclosure requirements is misplaced. Kapelsohn is not engaged as counsel for the defendant; rather, he is engaged as an expert witness who happens to be an attorney. The attorney work product doctrine protects material prepared by "investigators and other agents" upon which an attorney relies. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). Even in the cases of witnesses who are actually agents of the defendant—which Kapelsohn is not—when a defendant seeks to adduce the testimony of such an investigator or agent at trial, the work product privilege is waived with respect to matters covered in the testimony. *Id.* at 239. Thus, the defendant cannot cite "work product" as a basis to evade Rule 16's mandate that he disclose the substance of any interviews and conversations Kapelsohn had with third parties – whether memorialized or not – that formed a basis for any factual conclusions or opinions contained in his expert report.[5]

While the Government suspects that Kapelsohn may have interviewed the defendant and other trial witnesses as part of preparing his report, the Government knows for sure that Kapelsohn did consult at least one individual. Kapelsohn states in his report "I spoke by telephone with Mitchell Johnson of Security Equipment Corporation, the manufacturer of the Sabre OC ("pepper spray") units I am advised Officer Grier used…". Kapelsohn Report 4/18/22 at 2. Kapelsohn appears to rely on this conversation

---

[5] There is ample authority concerning waiver of work product protection in other criminal and civil cases. *See e.g., United States v. Twiddy*, 2007 WL 3256649, *10 (Dist. Colorado Nov. 2, 2007); *Dyson v. Maytag*, 241 F.R.D. 247, 251 (D.Del. 2007) ("With respect to privilege…litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions … are privileged or otherwise protected from disclosure when such persons are testifying or being deposed"). *See also Adkins v. Sogliuzzo*, 2011 WL 5040780 (D.N.J. 2011) (discussing the Third Circuits application of waiver principles in work product doctrine cases).

throughout his report, making the following statements: "As confirmed by the manufacturer, the contents (active ingredient) or both the duty-belt unit and 'crowd control' unit are the same." *Id* at 32. "The manufacturer has advised me that in over 20 years of selling OC products, it has never been advised of any eye injury or other injury to a subject resulting from the proximity at which the OC was deployed." *Id* at 34.

Clearly, Kapelsohn appears to be relying on his conversations with Mitchell Johnson as a basis for forming his expert opinions. The Government therefore seeks, pursuant to Rule 16, any written work product, emails, or other records of this conversation, and if not available, respectfully asks this Court to compel the defendant to provide a written summary of the relied-upon conversation. To the extent that Kapelsohn may have interviewed other individuals as well, including but not limited to the defendant and other witnesses in this case, the Government respectfully asks this Court to compel similar disclosures.

### All raw data, statistics, and scientific articles that form the basis of Kapelsohn's expert opinions or factual statements.

The Government seeks all raw data, statistics, and scientific articles that form the basis of opinions or factual statements contained in Kapelsohn's report. Defendant summarily responds that all of this material already is contained in Kapelsohn's report. Def. Response Letter, p. 3. Given the defendant's open reluctance to disclose the required information sought pertaining to third parties he interviewed, such as Mitchell Johnson, as outlined above, the Government anticipates that there likely are other raw data, statistics, and scientific articles that Kapelsohn has failed to disclose. Accordingly, the Government respectfully requests that this Court compel the defendant to respond to this request. To the extent that all of the required information is actually contained in the report, the Government requests that the Court order Kapelsohn to certify that this is the case.

**A list of any individuals that Kapelsohn consulted to form the basis for the opinions or factual statements in the expert report and any notes or communications with such persons.**

As noted above, the Government posits that Kapelsohn had various conversations and interviews with third party individuals, in order to formulate his expert opinions. These include, but are not limited to, discussions with Security Equipment Corporation employee Mitchell Johnson, as referenced above and in his report. Pursuant to the plain language of Rule 16, the Government seeks the disclosure of a full list of all those individuals who Kapelsohn consulted, in order to write his report in this case, as well as any notes, recordings or written product memorializing these conversations, and where there are none, a summary of these conversations.[6] The defendant responded that there are no such individuals.

That response is not accurate. Plainly, as discussed above, Kapelsohn not only interviewed, but relied upon a Security Equipment Corporation employee named Mitchell Johnson, when writing his report. He makes explicit references to that conversation throughout the report, as discussed above.

Given that the defendant was too circumspect to even identify Mitchell Johnson – whose name appears in the report – in response to this request, and that the defendant has a nuanced definition of the attorney work product doctrine (in which he imparts it on expert witnesses), the Government is concerned that defendant may withhold discoverable information concerning the defendant, other trial witnesses or other third parties consulted to fashion the opinions and factual statements contained in his report.

Again, information that Kapelsohn relied upon to fashion his report is plainly subject to Rule 16 disclosure and the Government maintains its request for this material.

**Catchall Order to Compel**

Given the defendant's outright reluctance to produce even those materials that he agrees are subject to disclosure under Rule 16, the Government respectfully requests that the Court include a catchall provision in its order compelling disclosure. Such a catchall provision would make clear that the defendant is ordered to turn over any discoverable information under Rule 16, and if he experiences any doubt about whether a particular piece of information is covered by Rule 16, he must submit such material to the Court for *ex parte* review. The Government has included a proposed Order in this filing for the Court's consideration.

**Conclusion**

The defendant continues to improperly withhold materials that are subject to Rule 16 disclosure, placing this Court's schedule for this case, the Government's ability to litigate its pending *Daubert* motion, to *voir dire* Kapelsohn and to prepare for cross-examination, in jeopardy. Further, all of the items sought are, to the extent they exist, items that Kapelsohn *already* consulted in the process of preparing his report. Accordingly, it should not be unduly burdensome for the defendant to produce them in advance of the pretrial conference on September 28th. For all these reasons, the Government respectfully maintains its request for an order compelling disclosure and a signed certification pursuant to Rule 16.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

s/Lindsey R. Harteis
LINDSEY R. HARTEIS
Assistant United States Attorney